Argued January 6, reversed February 10, argued on rehearing
March 31, former opinion withdrawn, conviction affirmed
June 17, 1954

# STATE OF OREGON *v.* KUHNHAUSEN

**266 P. 2d 698**
**272 P. 2d 225**

479

486

*Edward J. Georgeff* and *Rivon E. Jones,* of Portland, argued the cause and filed a brief for appellant.

*Winston L. Bradshaw,* District Attorney, of Oregon City, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, of Salem, and Walter J. Apley and Howard J. Blanding, Deputy District Attorneys, of Oregon City.

TOOZE, J.

The defendant, Bonnie Lee Kuhnhausen, appeals from a judgment of conviction for the crime of murder in the second degree. She was sentenced to life imprisonment.

On January 18, 1952, defendant and one Elmer Dorsey Williams were arrested in Portland, Oregon, and placed in jail as suspects in the beating two days earlier of one Jalmar Tarkia. Tarkia died on January 19, 1952, as the direct result of the beating which he had received. The State contended that the motive for such beating was robbery.

Upon this appeal defendant alleges four assignments of error as follows:

"1. The Court erred in denying the motions for dismissal of the indictment on the grounds that the same was not tried in the next term of Court from whence the cause was commenced, and that there had been a failure of prosecution.

"2. The Court erred in denying the motion for an order requiring that appellant be tried on the

original indictment returned against her by the Grand Jury on January 24, 1952.

"3. The Court erred in granting, over appellant's objections, the State's request that the witness Wampler be permitted to erect in the court room his own projector and screen, and to project on the screen a number of colored transparencies, (Ex. 17-24 inclusive, and 33) previously admitted in evidence.

"4. The Court erred in denying the motions for directed verdict on the grounds that the State had failed to show directly or circulstantially [sic] (a) that appellant was involved in the case as a principal, (b) that appellant was involved in the case as an accessory, and (c) that there was any robbery in connection with the death, and that the State had failed to show that a crime had been committed (Tr. 296-300, 479); and the Court erred in failing to give Appellant's Requested Instruction No. 1, to which ruling appellant duly excepted (Tr. 540), and which instruction was as follows:

"'You are instructed to return a verdict of "Not Guilty" as to all the charges included within the indictment in this case.'"

██ In view of the disposition we are compelled, under the law, to make of this case, it is unnecessary for us to discuss the evidence introduced upon the trial of defendant, or to otherwise outline the facts of the case. It is sufficient to state that a careful review of the trial record convinces us that there was substantial evidence to support the verdict, as well as substantial evidence from which the jury might have found the defendant "not guilty". This would dispose of defendant's assignment of error numbered "4", were that question properly before us. Moreover, if we were required to consider defendant's assignment of error numbered "3", it would be our conclusion that

the assignment is without merit. *State v. Long,* 195 Or 81, 124, 244 P2d 1033.

It is upon assignments of error numbered "1" and "2", and particularly upon assignment of error numbered "1", that we must base our decision. That requires a discussion of the record made prior to trial of the case.

On January 24, 1952, the grand jury for Clackamas county returned an indictment against Williams and defendant, jointly accusing them of the crime of murder in the first degree. On February 4, 1952, defendant, upon arraignment, pleaded "not guilty" to said indictment. On behalf of her codefendant Williams, a demurrer to the indictment was filed, it being contended that the indictment did not conform to the requirements of ch 7 of title 26, OCLA (ORS 132.510, et seq.). Under date of February 13, 1952, the demurrer was sustained, and in its order sustaining the demurrer the trial court directed that the indictment as to Williams be resubmitted to the grand jury pursuant to the provisions of §§ 26-826 and 26-827, OC LA (ORS 135.530 and 135.540). Thereafter, on February 14, 1952, the district attorney for Clackamas county moved the court for an order resubmitting the indictment to the grand jury as to the defendant Kuhnhausen, and on February 19, 1952, the trial court entered an order so resubmitting the indictment and further ordering "that pending action by said grand jury, that the defendant, Bonnie Lee Kuhnhausen, be held in custody without bail."

On February 20, 1952, the grand jury returned an indictment against Williams and defendant, jointly charging them with the crime of murder in the first degree. To this indictment, defendant entered a plea

of "not guilty" on February 25, 1952. On March 14, 1952, defendant filed her motion for a separate trial pursuant to the provisions of § 26-923, OCLA (ORS 136.060), and on the same day the court entered an order "that the defendant, Bonnie Lee Kuhnhausen, be tried separately from defendant, Elmer Dorsey Williams, upon a date to be set by the Court."

Under the statutes of this state, there are four regular terms of the circuit court for Clackamas county each year, each term being for a period of three months. The first term in each year commences on the first Tuesday in January and continues until the first Tuesday in April; the April term continues until the first Tuesday in July; the July term, until the first Tuesday in October; and the October term, until the first Tuesday in January following. § 93-254, OCLA (ORS 4.150).

On March 31, 1952, the trial court entered a general order continuing all cases not tried during the first term of court in 1952 over to the following term on the ground, as stated in the order, "that the Court did not have time to dispose of such cases during the first term".

The district attorney elected to try the case against the defendant Williams first. This trial commenced on April 20, 1952, resulting in a verdict of guilty of murder in the second degree. A special jury panel was drawn for the purposes of the Williams trial.

On March 4, 1952, and again on May 9, 1952, by letters adressed to the circuit court, the district attorney requested that a trial date be set for the trial of defendant. His applications were timely and in accordance with the practice in such cases.

On June 30, 1952, the trial court entered another general order continuing all criminal cases not tried

during the second term of court in 1952 over to the following term on the ground that the court did not have time to dispose of such cases during the second term.

On July 30, 1952, defendant filed a motion, supported by affidavit, to dismiss the case against her on the grounds "that the same was not tried in the next term of Court from when the cause commenced, and that there has been a failure of prosecution".

On said July 30, a hearing was held by the court upon such motion, the defendant being personally present at such hearing and represented by counsel. The State appeared by the district attorney. Testimony of the county clerk and some exhibits were admitted in evidence to support the continuance of the trial of defendant over the second term of court. The court denied the motion.

The case was set for trial for August 18, 1952, some six months after defendant had entered her plea of "not guilty" to the indictment. In the meantime, defendant remained in jail, the charge against her being a nonbailable offense.

On August 18, and before a jury had been empaneled to try the case, defendant renewed her motion for a dismissal of the indictment against her on the same grounds urged in her motion of July 30. Her motion was denied, and the trial proceeded to verdict and judgment. Defendant duly excepted to the several rulings of the court.

The record discloses that during the January and April terms of court, only one criminal case was tried to a jury. Some 33 criminal cases were disposed of upon pleas of guilty, and without jury trial. A large number of civil cases were tried to juries. On the first of May, 1952, the trial court set a number of civil cases

for trial during the months of May and June. No more cases were set for trial, neither civil nor criminal, until the first of July, 1952.

Upon the hearing on defendant's motion of July 30, the trial court made the following statement for the record:

> "Well, as a matter of fact, Mr. Jacobs, the record shows that immediately upon the trial of the Williams case being completed, within approximately a week or ten days thereafter, the District Attorney requested the Court to set a trial date in the Kuhnhausen case. *I have been set up about two or three months in advance since the first of the year,* which means that on a request being made on the 9th of May that, as the average prevailed at that time and I have no independent recollection of it, *that it would almost necessarily be carried into the next term of court unless I took cases off the docket that were already previously set.*" (Italics ours.)

The record shows that the cases referred to by the court as having been set for trial were all civil cases.

It will be noted that after completion of the Williams trial more than two months remained of the April (or second) term of court. Nearly two months of the term remained after the district attorney had made his request of May 9 for a trial date.

Article 1, § 10, Oregon Const., provides:

> "No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

■ A defendant in a criminal action is, by this constitutional provision, guaranteed a speedy trial. *State*

*v. Harris,* 101 Or 410, 415, 200 P 926; *State v. Breaw,* 45 Or 586, 587, 78 P 896.

■ From the very earliest times the right of an accused person to a speedy trial has been recognized. In the United States it is guaranteed by constitutional and statutory provisions. It is a fundamental right, and one not subject to judicial discretion. It extends to all persons accused of crime, to the guilty as well as to the innocent.

■ There is no general principle that fixes the exact time within which a trial must be had to satisfy the requirement of a speedy trial. The term ''speedy'', or its equivalent, as employed in constitutional provisions guaranteeing a speedy trial to accused persons, being a term of indeterminate meaning, permits legislative definition to some extent. Statutes providing for a discharge of accused unless trial is had within a stated time after indictment, or which require an indictment or information within a stated time, are enacted for the purpose of enforcing the constitutional right, and they constitute a legislative construction or definition of the constitutional provision and must be construed fairly to the accomplishment of that end. 22 CJS 715, Criminal Law, § 467(3).

Section 26-2002, OCLA (ORS 134.120) has for its sole purpose the enforcement of the right of an accused person to a speedy trial as guaranteed by § 10, Art 1, Oregon Const., supra. The statute was adopted by the legislature of this state in 1864 and has not been amended or altered in any respect since that time. It provides:

''If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, be not brought to trial at the next term of the court in which the indictment is triable,

after it is found, the court *must order the indict-
ment to be dismissed,* unless good cause to the con-
trary be shown." (Italics ours.)

It is interesting to note that the foregoing statute
is almost identical in terms with one adopted by the
Oregon territorial legislature. Section 29 of ch
XXXVI, Statutes of Oregon Territory, 1854. Our con-
stitution was adopted September 18, 1857, and, by Act
of Congress, Oregon was admitted to the Union as a
state on February 14, 1859. Section 7 of Art. XVIII,
of our original constitution, provided:

"All laws in force in the territory of Oregon
when this constitution takes effect, and consistent
therewith, shall continue in force until altered or
repealed."

No attempt was made to legislate generally for the
state until the legislative session of 1864, when a com-
plete new code of laws was adopted. § 26-2002, OCLA,
supra, was a part of that code.

■ This statute constitutes the legislative construc-
tion and definition of the constitutional provision (§ 10,
Art 1, Oregon Const., supra), and, to all intents and
purposes, having been adopted contemporaneously
with the adoption of the constitution, it must be read
into and considered a part of the constitutional guar-
anty. *State v. Swain,* 147 Or 207, 214, 31 P2d 745, 32
P2d 773, 93 ALR 921.

■■ The command of the statute is mandatory. If a
defendant be not brought to trial at the next term of
court in which the indictment is triable, after it is
found, no *good cause* to the contrary being shown, the
court *must* order the indictment to be dismissed; it has
no discretion in the matter. In view of the constitu-
tional provision and the terms of the statute, the duty

of the court to dismiss in such circumstances becomes, in effect, a constitutional duty. Where defendant's right to a dismissal becomes fixed, the court has no authority or jurisdiction to proceed further with the prosecution. Any action by the court thereafter in furtherance of prosecution on that indictment would be a nullity.

■ We have held that the constitutional and statutory provisions do not necessarily require the trial of an accused person within the term of court in which the indictment is returned. *State v. Breaw,* supra. But the trial must be held during the following term, unless *good cause* to the contrary be shown, or unless the trial is postponed upon the application of the accused or by his consent.

■ Under the mandatory provisions of the statute, the defendant should have been tried at the latest during the April term of the court. The defendant did not apply for a continuance of the case over that term and into the July term; neither did she consent to a continuance beyond the April term. When "consent" of a defendant to a continuance for trial is claimed, an express consent, as distinguished from an implied consent, must be shown. In *State v. Chadwick,* 150 Or 645, 650, 47 P2d 232, we said:

"The law imposes no duty on a defendant, charged with a crime, of calling his case for trial or insisting that it be set for trial at any particular time. That duty devolves upon the state. When the state sees fit to charge a defendant by indictment with the commission of a crime, it is equally the duty of the prosecutor to see that defendant is arraigned and enters a plea and speedily brought to trial, as it is to charge him with the offense in the first place: State v. Rosenberg, 71 Or. 389 (142 P. 624); In re Clark, 79 Or. 325 (154 P. 748, 155 P.

187). We think that consent means an express consent on the part of defendant that the case be continued: State v. Barrett, supra [121 Or 57, 254 P 198]."

It remains for us to discuss what constitutes "good cause" for a continuance of a criminal trial beyond the court term next following the term in which the indictment is returned.

As we have before noted, the only cause assigned by the trial court for continuing defendant's trial into the July term of court was that he had civil cases set for trial, and in order to try defendant before August 18, it would have been necessary to take one or more of the civil cases off the trial docket.

Ordinarily, this court will not review the findings of the circuit court as to whether good cause has or has not been shown, but where the record shows the cause that existed why the case should be continued, then this court will consider whether the reason found by the court for the continuance is sufficient upon which to base an order denying dismissal of the indictment. *State v. Chadwick,* supra; *State v. Barrett,* supra; *State v. Bateham,* 94 Or 524, 186 P 5. In *State v. Goldstein et al.,* 111 Or 221, 224, 224 P 1087, this court had before it for consideration a general order of the trial court continuing all cases not tried and disposed of until the next regular term of court, "because of the lack of time on the part of the court to hear and dispose of the same * * *." As to this order, we said:

> "*In the absence of any showing to the contrary,* and there is none, we assume that this record, made by a court of general jurisdiction, is a verity; and such entry has been held to be sufficient; State v.

Bertschinger, 93 Or. 404 (177 Pac. 63).'' (Italics ours.)

In the instant case the reason for the continuance as well as for the denial of defendant's motion to dismiss the indictment, as above stated, clearly appears from the record made by the court at its own instance upon hearing of the motion to dismiss.

Did the reason assigned by the court for its action constitute ''good cause'' for the continuance?

We find that it did not. By virtue of the constitutional provision guaranteeing a speedy trial to an accused person, and the statutory definition and construction of such constitutional guaranty, criminal trials have a preference over the trial of civil cases. The fact that a number of civil cases has been set for trial is no valid excuse for the failure to set promptly for trial a criminal case that is at issue, if necessary to comply with the mandatory provisions of the statute. In order to afford the defendant a speedy trial in this case, and to thus preserve and protect her constitutional right, it was the duty of the court, if necessary, to take one or more of the civil cases off the docket.

Although the constitutional provision itself makes no distinction between civil and criminal cases as to the right of a speedy trial, nevertheless, by virtue of the provisions of § 26-2002, OCLA (ORS 134.120), supra, a clear distinction exists, and by reason thereof, the trial of a criminal case does have the preference over the trial of a civil case, insofar as it is necessary to comply with the provisions of the statute. Our code contains no statute similar to § 26-2002, OCLA (ORS 134.120), supra, as to civil cases in general.

We are not unmindful of what this court said in *State v. Lee*, 110 Or 682, 684, 224 P 627. There the court

had for consideration a general order for the continuance of all cases into the next term of court because of lack of time on the part of the court to hear and dispose of them. As to this order, we said:

> *"The force of this order is not overcome by anything of record.* The law does not give criminal cases the 'right of way'." (Italics ours.)

Then, after quoting Art 1, § 10, Oregon Const., supra, the court stated:

> "The right guaranteed by our fundamental law for a 'speedy' hearing applies alike to civil and criminal causes."

We acknowledge the fact that the unequivocal statement that "The law does not give criminal cases the 'right of way' ", and the further statement that "the right guaranteed by our fundamental law for a 'speedy' hearing applies alike to civil and criminal causes", might well be misunderstood and create some confusion. It is true that the constitution does not, nor does any statute of this state, expressly provide that the trial of criminal cases shall have precedence over the trial of civil cases, but it is manifest that the effect of the provisions of § 26-2002, OCLA (ORS 134.120), supra, is to give such preference. There is sound reason for this preference. Civil cases usually have to do with problems of money, property, or status, whereas criminal cases involve the personal liberty, freedom, and often, life of the individual. Since Magna Charta the protection of the life, liberty, and freedom of the individual has ever been the primary concern of the English-speaking world, the basis for and substance of the Bill of Rights incorporated into the federal and several state constitutions. It is obvious that if the trial of criminal cases did not take precedence over the

trial of civil cases, the fundamental right of an accused person to a speedy trial might, and perhaps would, in many instances be defeated.

In this connection it also is highly significant that, although there is no statute which directly or indirectly gives hearings on criminal appeals a preference over hearings in civil cases in this court, nevertheless, in order to further enforce the constitutional right of an accused person to a speedy trial, we have, by unwritten rule, ever recognized such right of preference.

 In what we have said, we do not wish to be understood as holding that in every case the constitutional right of an accused person to a speedy trial will be satisfied by setting the trial in the next term of court following the term in which the indictment was returned. Wholly apart from the statute, the constitutional right of an accused person to a speedy trial contemplates a trial conducted according to fixed rules, regulations, and proceedings at law, free from vexatious, capricious, and oppressive delays. The right is consistent with delays, and, in the final analysis, whether such a speedy trial has been afforded must be determined in the light of the circumstances of each particular case as a matter of judicial discretion. In such cases the provisions of the statute not being in question, the action of the trial court will not be disturbed unless the record clearly discloses an abuse of discretion. In cases involving nonbailable offenses and, particularly, where the defendant himself requests an early trial, delays without good cause should not be countenanced. *State v. Clark,* 86 Or 464, 470, 168 P 944; 22 CJS 715, Criminal Law, § 467(b), (3); 14 Am Jur 859, Criminal Law, § 135.

It has been suggested that the general order of the court continuing all pending matters, including the trial of criminal cases, over to the following term of court, because of lack of time on the part of the court to hear and dispose of the same, imports absolute verity, and, unless expunged from the record, is binding upon us. In *State v. German,* 163 Or 642, 645, 98 P2d 6, Mr. Justice BEAN, speaking for the court, said:

"* * * An affidavit was filed on behalf of defendant attempting to show that the court might have tried the cases and to avoid the effect of the several orders of continuance above mentioned. *No direct attack has ever been made against the validity of these orders, and we do not think that the order continuing any case could be attacked collaterally.* The order above quoted, appearing in the journal, was signed and approved in open court by the presiding judge at the end of each term.

"It is a well-settled rule that an order appearing in the journal of the court is taken by this court as an *absolute* verity. State v. Moltzner, 140 Or. 128, 13 P. (2d) 347; * * *." (Italics ours.)

In *State v. Moltzner,* supra, at page 136, the court, speaking through Mr. Justice KELLY, stated:

"Affidavits were displayed by counsel for defendant at the argument of the case to the effect that the orders of continuance made at the close of each term, as aforesaid, were entered pursuant to a practice which had prevailed for many years and that no judge had informed affiants that such order had been made. *This is entirely insufficient to impeach the record of the court. In order to be controlling, such impeachment must be made by the court itself.*

" * * * * *

"The statement, that lack of time on the part of the court required a continuance of the unfinished

business, is in itself good cause for not dismissing pending indictments: State v. Bertschinger, 93 Or. 404 (177 P. 63); State v. Lee, 110 Or. 682, 687, (224 P. 627); State v Bateham, 94 Or. 524 (186 P. 5); State v. Goldstein et al., 111 Or. 221 (224 P. 1087). If such a statement, appearing as it does in the journal of the court, is false, or was inserted without authority, application to correct the entry should have been made *to the circuit court.* In the absence of any order expunging it, we are bound by it. *'Until impeached by the court, itself, it imports verity'.* State v. Gilbert, supra [55 Or 596, 112 P 436]; Ex parte Jerman, 57 Or. 387, 402 (112 P. 416, Ann. Cas. 1913A, 149), and cases there cited; Ollschlager's Estate, 50 Or. 55 (89 P. 1049); Elliott's Appellate Procedure, § 186." (Italics ours.)

■ When read in the light of our prior decisions, the holdings in *State v. German* and *State v. Moltzner,* with one exception, do not announce any new law in this state. We have consistently held that these orders import verity *"in the absence of any showing to the contrary".* The addition of the word "absolute" before the word "verity" in *State v. German* adds nothing to the rule. The statement in *State v. Moltzner* that "in the absence of any order expunging it, we are bound by it" is not the law of this state and is expressly overruled. If the record in the proceeding itself impeaches the order, this court certainly is not bound by it.

The statement in *State v. German* that "no direct attack has ever been made against the *validity* of these orders" manifestly refers to something other than the rule of *verity* attached thereto. It is elementary that these orders should not be subject to collateral attack.

Furthermore, the concluding paragraph of the opinion in *State v. German* shows that this court actu-

ally examined and passed upon the entire record in the case, and based its ultimate finding of "good cause" for the continuance upon such record. The court said:

> "The facts and the record in these cases show good cause existed for not proceeding with these indictments, and the judgment of the circuit court is affirmed."

As to these general orders, it is obvious that they must be deemed to have been entered in each particular case affected thereby, as a part of the record in such case, to all intents and purposes as though a separate entry had actually been made in the case. Otherwise, they could not affect in any way the case in question.

The record in a criminal case commences with the return of an indictment and includes each and every step in the proceedings thereafter taken up to and including actual trial and judgment. An order for continuance is an integral and important part of such proceedings, directly affecting the state, as well as the accused; it is a part of the "record".

It would seem to require no argument to establish the proposition that a motion to dismiss an indictment for failure to prosecute is a direct attack upon and challenge to the entire record, including an order of continuance. A hearing upon such a motion, and the evidence offered in connection therewith, if any, together with any order entered with respect thereto, also become a part of the record in the case. When we are called upon to examine that record, as we are on an appeal, we view it in its entirety, not in piecemeal. If the record as a whole disputes the facts stated in the order for continuance, that order no

longer imports verity and has no binding effect. *State v. Chadwick,* supra; *State v. Lee,* supra; *State v. Goldstein et al.,* supra.

In the instant case, and as before noted, the trial court itself offered and received testimony upon the hearing of the motion to dismiss in support of its general order of continuance; in effect, the trial court itself impeached the order in question.

■ Upon the record before the trial court in the instant case, it was its mandatory and constitutional duty to dismiss the indictment against the defendant upon her motion for such dismissal. When all is said and done, the statutory requirement respecting the time an accused person must be brought to trial is a salutary rule adopted in the interests of the public, as well as in the interests of accused persons. It is a rule that must be obeyed.

■ The disposition we are compelled to make of this case renders unnecessary a discussion of defendant's assignment of error numbered "2". However, we do find from a review of our prior decisions that that particular assignment is without merit.

The question of whether defendant has been in jeopardy, in the light of the disposition we must make of the case on this appeal, is not before us for determination and, therefore, upon that matter we express no opinion.

The judgment of the trial court is reversed and this cause remanded with directions to dismiss the indictment and discharge the defendant.

LATOURETTE, C. J., dissenting.

I dissent from the majority opinion remanding the case to the trial court with directions to dismiss the indictment and discharge the defendant. My reason

for dissenting is that the orders of the trial court, dated March 31, 1952, and June 30, 1952, continuing all criminal cases to the following term on the grounds that the court did not have time to dispose of such cases during the term, imported absolute verity and were not subject to collateral attack.

It will be remembered that on July 30, defendant filed a motion to dismiss the case against her on the grounds that "the same was not tried in the next term of Court from when the cause commenced, and that there has been a failure of prosecution." Hearing was had upon such motion, evidence was taken, and the court denied the motion. Later, on August 18, the date of the trial, defendant renewed her motion for a dismissal, which was likewise denied.

It will be noted that the record upon which the prevailing opinion bases its decision was made subsequent to the entry of the continuing orders. The continuing orders were never under direct attack. The motions to dismiss the indictment were based on § 26-2002, OCLA (134.120 ORS) which requires an order to dismiss the indictment if the defendant is not brought to trial at the next term of court unless the same is continued for good cause. The continuing orders were brought into the case incidentally and collaterally.

In *State v. Moltzner*, 140 Or 128, 137, 13 P2d 347, this question was squarely before the court. There the defendant moved to dismiss the indictments on the same ground that was urged in the motion in the instant case. We there said:

> "The statement, that lack of time on the part of the court required a continuance of the unfinished business, is in itself good cause for not dismissing pending indictments: State v. Bertschinger, 93 Or. 404, 177 P. 63; State v. Lee, 110 Or. 682, 687,

224 P. 627; State v. Bateham, 94 Or. 524, 186 P. 5; State v. Goldstein et al., 111 Or. 221, 224 P. 1087. If such a statement, appearing as it does in the journal of the court, is false, or was inserted without authority, application to correct the entry should have been made to the circuit court. In the absence of any order expunging it, we are bound by it. 'Until impeached by the court, itself, it imports verity.' State v. Gilbert, supra; Ex parte Jerman, 57 Or. 387, 402, 112 P. 416, Ann. Cas. 1913A 149, and cases there cited; Ollschlager's Estate, 50 Or. 55, 89 P. 1049. Elliott's Appellate Procedure, § 186."

In *State v. Weitzel,* 153 Or 524, 527, 56 P2d 1111, this question was again before us for determination. We there reaffirmed the rule laid down in *State v. Moltzner,* supra, saying:

"It is a well-settled rule that an order appearing in the journal of the court is taken by this court as an absolute verity. * * *"

In *State v. German,* 163 Or 642, 645, 98 P2d 6, a motion was made to dismiss an indictment because the case was not brought to trial within the next term of court. There was a general order continuing all cases to the next term of court because of unfinished business, etc. We said:

"* * * An affidavit was filed on behalf of defendant attempting to show that the court might have tried the cases and to avoid the effect of the several orders of continuance above mentioned. *No direct attack has ever been made against the validity of these orders, and we do not think that the order continuing any case could be attacked collaterally.* The order above quoted, appearing in the journal, was signed and approved in open court by the presiding judge at the end of each term.

"It is a well-settled rule that an order appearing in the journal of the court is taken by this court as

an absolute verity. State v. Moltzner, 140 Or. 128, 13 P. 2d 347; State v. Gilbert, 55 Or. 596, 112 P. 436; Ex Parte Jerman, 57 Or. 387, 112 P. 416, Ann. Cas. 1913A 149; Ollschlager's Estate, 50 Or. 55, 89 P. 1049; State v. Weitzel, 153 Or. 524, 56 P. 2d 1111.'' (Italics supplied.)

It appears to be the settled law of this state that a continuing order such as we have in this case imports absolute verity and can only be vacated by a direct attack on the order itself and that a motion to dismiss an indictment because the case was not brought to trial at the subsequent term is not a direct attack on the order of continuance but a collateral attack.

The majority opinion relies principally upon *State v. Chadwick,* 150 Or 645, 650, 47 P2d 232. This case, as will presently be shown, does not disturb the rule announced in the three cases hereinbefore relied on. It does not appear from that case that any general order of continuance was entered. A motion was filed to dismiss the indictments because the cases were not tried during the next term of court. The trial court, in ruling on that motion, by its order recited: ''* * * said indictments was [sic] continued by the tacit consent and acquiescence of both plaintiff and defendant * * *.'' There was the further recital in such order:

''And it further appearing that the work and duties of this court in the other counties composing this judicial district is such that the court will not have time to try defendant on said indictments at the present term of this court.''

From that order denying defendant's motion to dismiss defendant appealed to this court. In reversing the case we held that on the face of the order entered no express consent of the defendant for continuance

was shown and that the cause for not trying the case in the next term of court was not a sufficient cause. The distinction between that case and the three cases relied upon by me is that there a direct attack was made on the order denying dismissal by appeal from the same to this court.

It is therefore clear that since the continuance orders in this case have not been attacked directly, but collaterally, the same are unimpeachable and must be given full faith and credit. For this reason, in my opinion, the defendant is not entitled to have her motion to dismiss sustained.

WARNER and LUSK, JJ., concur in this dissent.

## ON REHEARING

*Winston L. Bradshaw,* District Attorney for Clackamas County, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General for the State of Oregon.

*Edward J. Georgeff,* of Portland, argued the cause for appellant. With him on the brief was Rivon E. Jones, of Portland.

BRAND, J.

The respondent State of Oregon has moved for a rehearing. In its supporting brief the state presents for our consideration certain propositions not found in its original brief. We granted the rehearing and have reconsidered the case on the merits. In its original opinion this court found it necessary to consider

only the defendant's assignment of error No. 1 which reads as follows:

"The Court erred in denying the motions for dismissal of the indictment on the grounds that the same was not tried in the next term of Court from whence the cause was commenced and that there had been a failure of prosecution."

The decision upon this assignment by a divided court was to the effect that it was the "mandatory and constitutional duty" of the trial court "to dismiss the indictment against the defendant upon her motion for such dismissal." The case is one of profound importance with much to be said upon both sides of the controversy.

We will first direct our consideration to assignment of error No. 1. A bare record of events chronologically arranged will form a convenient basis for consideration of the facts:

1 January 1952. First term of court, Clackamas County begins.

24 January. Indictment returned against defendant and another.

4 February. Defendant, upon arraignment, pleads "not guilty."

— February. Codefendant Williams demurs to indictment.

13 February. Demurrer sustained and indictment as to codefendant resubmitted to grand jury.

14 February. District Attorney moves for an order resubmitting to the grand jury the indictment as to the defendant Kuhnhausen.

19 February. Trial court orders resubmission.

20 February. Indictment returned against defendant Kuhnhausen and codefendant Williams.

25 February. Defendant Kuhnhausen pleads "not guilty."

26 February. Defendant's attorney resigns and new attorney appointed.

4 March. District Attorney writes to circuit court requesting trial date for defendant Kuhnhausen and Williams.

14 March. Defendant files motion for separate trial. Motion allowed.

31 March. Trial court enters general order continuing all cases during first term of 1952 upon the ground "that the Court did not have time to dispose of such cases during the first term."

1 April. Second term of court commences.

20 April. Trial of codefendant Williams results in conviction.

9 May. District Attorney requests that trial date be set.

30 June. Last day of second term. Court continues all criminal cases not tried to following term on the ground that the court did not have time to dispose of such cases during the second term.

1 July. Third term begins and continues until 7 October.

1 July. District Attorney requests court to set case for trial.

30 July. Defendant files motion to dismiss on grounds "that the same was not tried in the next term of Court from when the cause commenced, and that there has been a failure of prosecution".

30 July. Hearing held upon the motion. Defendant personally present. Testimony taken and motion denied.

18 August. Defendant moved for dismissal on same grounds as before stated. Motion denied.

18 August. Trial begins. Defendant convicted.

19 August. Defendant renews motion to dismiss.

27 August. Defendant sentenced to life imprisonment.

25 September. Defendant appeals "from that certain judgment entered against her on or about August 22, 1952.

The indictment was filed on 24 January. Thereafter a demurrer filed by codefendant Williams was sustained, and the motion for resubmission of the indictment as to the defendant Kuhnhausen was allowed and a new joint indictment was returned on 20 February. The procedure was certainly proper. It is a matter of record and judicial knowledge, and satisfactorily explains about 26 days of the delay. On 4 March the district attorney, by letter, requested that the case of *State v. Williams and Kuhnhausen* be set for trial. On 14 March the defendant Kuhnhausen moved for a separate trial. If she had not so moved, it is obvious that she would have been tried with her codefendant whose trial took place 20 days after the commencement of the second term of court, the one following the term at which she was indicted. It was her right to make such a motion, and the order directing separate trials was properly made, but that motion and order explains a material portion of the delay. On 31 March, which was the last day of the term in which the indictment was returned, the trial court entered a general order continuing to the next term of court all pending cases. The reason stated in the order was "that the court did not have time to dispose of such cases during the first term". A similar order on similar grounds was made by the court on 30 June, the last day of the second term. Thirty days after the commencement of the third term the defendant filed her motion to dismiss "on the grounds that the same was not tried in the next term of Court from whence the cause was commenced, and that there has been a failure of prosecution." A supporting affidavit recited, among other matters, the motion and order for separate trial and the ensuing trial of the codefendant Williams. It also states that "this Court

has judicially determined and disposed of approximate [sic] thirty-three (33) other criminal cases involving felonies which have arisen since the indictment of the above defendant, and that many more other civil cases were likewise judicially disposed of by this Court." In arguing the motion for dismissal, counsel for the defendant said:

"* * * I realize the Court has an extremely heavy docket, and also I feel that criminal cases, in particular default cases that are non-separable, should have a precedence in trial dates.

* * * * *

"I think the Court's order also shows, your Honor, that in the period from the time that the defendant was indicted until the present time this Court judicially determined thirty-three other criminal cases, not counting the terrific amount of civil work including trials. Now, in those thirty-three cases, naturally, there were not guilty trials in those thirty-three cases. However, the District Attorney did see fit to carry those cases through to a conclusion, whether there was a guilty plea or whatever it was, or an arraignment, although, I might say, in those thirty-three cases there were arraignments and pleas and everything else together with the business the District Attorney's office saw fit to carry through to a successful conclusion, although they weren't carried over from one term to the next. There were thirty-three of those cases."

Deputy County Clerk Santos testified that since the first of the year the court had been setting cases on an average of two or three months in advance of the trial dates. At the hearing on the motion the court stated for the record:

"* * * the record shows that immediately upon trial of the Williams case being completed, within approximately a week or ten days, there-

after the District Attorney requested the Court to set a trial date in the Kuhnhausen case. I have been set up about two or three months in advance since the first of the year which means that on a request being made on the 9th of May that, as the average prevailed at that time and I have no independent recollection of it, that it would almost necessarily be carried into the next term of court unless I took cases off the docket that were already previously set.

\* \* \* \* \*

""\* \* \* My recollection is, Mr. Jacobs, that I didn't set cases on the first of June. I set them on the first of May, and I was set so far in advance that I waited until the first of July because, as I recall, I was set for close to three months in advance at that time.

"It is the opinion of the Court \* \* \* that the conditions of the docket as having been brought out by the testimony of the Clerk, that it would have been necessary to continue this case until the present term of court before it could be tried. For that reason that I believe that, that among other things as shown here is sufficient cause. The motion will be denied. In any event, I think that the record indicates that the District Attorney most certainly made a timely effort to have the case set. Of course, the Court sets these cases in its own judgment, and I think the condition of the docket as shown here bears out the fact that it could not very well have been set prior to this month of Court without taking cases off the docket that were previously set some two months. \* \* \*""

The motion to dismiss was denied. The case was called for trial on 18 August. The defendant, by her counsel, stated that she was ready for trial, and then repeated her motion to dismiss, which was denied without further evidence or argument. After examination of the jury the defendant renewed her motion to dismiss upon

the same grounds as before. The court, in denying the motion, said:

"The motion is denied, Mr. Jacobs, for the reason that the volume of business transacted by the Court was such that an earlier trial could not be set owing to the fact that cases had been previously set prior to the District Attorney's application which was timely, which made it impossible to try it in the term of Court following her indictment and plea. * * *"

The Oregon constitution provides in general terms:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Constitution of Oregon, Art I, § 10.

■ The next section of the Bill of Rights (Art I, § 11) specifically enumerates the "Rights of accused in criminal prosecution:" No mention is made to the right of a speedy trial. That right, insofar as it emanates from the constitution, depends upon the provisions of Article I, section 10, supra. As its terms imply, Article I, section 10 applies to both civil and criminal cases. *Hooton v. Jarman Chevrolet Co.*, 135 Or 269, 293 P 604, 296 P 36; *Hough v. Porter*, 51 Or 318, 449, 95 P 732, 98 P 1083; *State v. Lee*, 110 Or 682, 224 P 627.

■ It is, of course, clear to all that the mandate of the constitution must not be violated. The question at issue relates to the meaning and application of the constitutional mandate and the relation of our statutory law thereto.

■ We first consider what is the effect of the constitutional mandate considered without regard to any

statutory provisions. We quote with approval from the original opinion in this case:

"* * * Wholly apart from the statute, the constitutional right of an accused person to a speedy trial contemplates a trial conducted according to fixed rules, regulations, and proceedings at law, free from vexatious, capricious, and oppressive delays. The right is consistent with delays, and, in the final analysis, whether such a speedy trial has been afforded must be determined in the light of the circumstances of each particular case as a matter of judicial discretion. * * *"

The statement is in substantial harmony with the holding in *Johnston v. Circuit Court, Multnomah County,* 140 Or 100, 103, 12 P2d 1027, where it is said:

"* * * A speedy trial is one conducted according to fixed rules, regulations, and proceedings of law free from vexatious, capricious, and oppressive delay created by the ministers of justice * * *"

To the same effect see *State v. Lee,* supra; *State v. Swain,* 147 Or 207, 214, 31 P2d 745, 32 P2d 773; *State v. Clark,* 86 Or 464 at 473, 168 P 944; *Pines v. District Court,* 233 Iowa 1284, 10 NW 574. The point need not be labored further for the defendant relies upon the same rule in her brief.

In *State v. Harris,* 101 Or 410, 415, 200 P 926, the court said:

"* * * The constitutional provision for a speedy trial was not intended to provide a loophole for the escape of one accused of the commission of an offense without trial when the same is had within a reasonable time. * * *"

In *State v. Breaw,* 45 Or 586, 588, 78 P 896, the court describes the constitutional provision as giving

"the right of a defendant in a criminal action to a trial as soon after the information or indictment is filed as the prosecution can with reasonable diligence prepare for the trial, and the delays growing out of the established method of procedure will permit * * *." The relevant statute provides:

"If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial at the next term of the court in which the indictment is triable after it is found, the court shall order the indictment to be dismissed, unless good cause to the contrary is shown." ORS 134.120 (OCLA, § 26-2002.)

In our original opinion we were moved by certain language from the decisions of our own and other courts to say that the constitutional requirement that justice shall be administered without delay "permits legislative definition to some extent", and we added that such statutes "constitute a legislative construction *or* definition of the constitutional provision * * *." (Italics ours.) We then went further and said, "This statute constitutes the legislative construction *and* definition of the constitutional provision * * *" (emphasis ours), and on this basis we held that the statute must be read into and considered a part of the constitutional guaranty. In support we cited *State v. Swain,* supra, 147 Or 207, 31 P2d 745, 32 P2d 773. In that case we said of the statute only this:

"The purpose of section 13-1602 is to carry into effect the guaranty embodied in Article I, section 10, Oregon Constitution, that 'justice shall be administered * * * without delay * * *.' State v. Lee, 110 Or. 682 (224 P. 627); State v. Putney, 110 Or. 634 (224 P. 279)."

Courts have repeatedly used similar language. In *State v. Clark,* supra, 86 Or 464, 168 P 944, we said

the statute was enacted "pursuant" to the constitutional provision.

Counsel for the defendant cites *State v. Putney,* 110 Or 634, 224 P 279, as holding that the legislature may define the constitutional provision "to some extent." The court in that case did not go even so far. It merely said that the statute was enacted "to carry out that constitutional guaranty." 110 Or at 645.

In *State v. Chadwick,* 150 Or 645, 648, 47 P2d 232, we said that the statute was enacted "in order to carry out this provision of the state constitution." Neither *State v. Swain,* supra, nor the other cases cited supra go to the extent of saying that the statute must be "considered a part of the constitutional guaranty." Of course, the statute was passed to carry out the requirement of a speedy trial, but that does not necessarily mean that the statute becomes an integral and binding part of the constitution. Speaking of the nature of the constitution, Chief Justice Marshall, with profound wisdom, said:

"* * * Its nature, therefore, requires, that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects be deduced from the nature of the objects themselves. That this idea was entertained by the framers of the American constitution, is not only to be inferred from the nature of the instrument, but from the language. Why else were some of the limitations, found in the ninth section of the 1st article, introduced? It is also, in some degree, warranted by their having omitted to use any restrictive term which might prevent its receiving a fair and just interpretation. In considering this question, then, *we must never forget that it is a constitution we are expounding.*" *M'Culloch v. The State of Maryland,* 4 Wheaton 316, 4 L ed 579, 601. (Italics ours.)

Constitutions are not adopted to control the rights and procedures of the moment but to establish broad principles of justice and fair play for all time.

■ We hold that extreme caution should be exercised in reading into a constitutional provision which is couched in general terms, the specific and detailed provisions of a statute enacted by the legislature pursuant to the constitutional guaranty.

■■ In *State ex rel. Ricco v. Biggs*, 198 Or. 413, 430, 255 P2d 1055, this court said of the rights established by the constitution:

> "* * * The duty of seeing that they are protected and preserved inviolate falls squarely upon the shoulders of the judiciary. The performance of this duty is one of the inherent powers of the court, a power which the legislature can neither curtail nor abolish."

In our original opinion in the pending case we also said:

> "In what we have said, we do not wish to be understood as holding that in every case the constitutional right of an accused person to a speedy trial will be satisfied by setting the trial in the next term of court following the term in which the indictment was returned. * * *"

The quoted statement clearly demonstrates that the statute in question is not a "definition" of the constitutional provision but was merely passed pursuant to it. If the statute were a definition of the constitutional right, then compliance with the statute would of necessity be compliance with the constitution. Of course, the uniform legislative interpretation or application of indefinite constitutional provisions of long standing is entitled to serious consideration by the courts, though it is not binding upon them. *Hawley v. Ander-*

*son,* 99 Or 191, 190 P 1097, 195 P 358; *Walker v. Polk County,* 110 Or 535, 223 P 741.

In *State v. McGowan,* 113 Mont 591, 131 P2d 262, the Montana court quoted language from 22 CJS, Criminal Law, § 467, to the effect that statutes passed for the purpose of enforcing the constitutional right constitute a legislative construction or definition of the constitutional provision. The Montana court said:

"* * * We think the application of this rule is correctly suggested in the case of State v. Le Flohic, 127 Minn. 505, 150 N.W. 171, 172, where it is said: 'Whether a trial is a speedy trial within the Constitution is a judicial question. The Legislature cannot say and does not say that a trial is speedy if had within the time * * * mentioned in the section of the statute quoted. * * *'"

So long as the doctrine of separation of powers remains basic in our system, the ultimate power and duty of the courts to construe the constitution must rest with the courts alone. That power should not be lightly whittled away by any rule which recognizes the power of the legislature to authoritatively construe the constitution. It may be added that if ORS 134.120 is a contemporaneous construction and definition of the constitutional provision, there would be equal reason for holding that two other and different statutes which were also passed in 1864 must also be "considered a part of the constitutional guaranty." We refer to ORS 136.070 and ORS 136.120.

It has been suggested that there is an exception to the general rule in the case of a contemporaneous legislative construction of the constitution. ORS 134.120 is substantially identical to a territorial statute which was in existence when the constitution of Oregon was adopted in 1857. The present statute was enacted in

1864. Conceding, for the sake of argument, that the legislature had power to bind this court as to the construction of the constitution, it would necessarily follow that the only constitutional provision which the legislature could "construe and define" would be the constitution which was in force at the time that the statute was enacted. Article VII of the constitution as originally adopted provided that "The circuit court shall be held twice, at least, in each year, in each county organized for judicial purposes * * *." Orig Art VII, § 8, p 238 OCLA. It would seem to follow that if the statute of 1864 construed and defined the constitutional provision for a speedy trial, the result would be that a trial is speedy if brought within one year, because the second term of any year, under the original constitution and decisions of this court, continues until terminated by an affirmative judicial act or by the commencement of a new term. *Ex parte Harrell*, 57 Or 95, 110 P 493; *State v. Ryan*, 114 Or 91, 96, 97, 234 P 811; *Deering v. Quivey*, 26 Or 556, 560, 38 P 710. We hold that the statute requiring dismissal for failure, without good cause, to prosecute at the next term of court after the indictment, is not and cannot be a binding legislative definition of the present constitution as amended in 1910 which contains no provision whatever as to the number of terms which shall be held in any county.

Under statutory provisions, there were twelve counties in Oregon having only two terms; six having four; and one having ten terms a year. The remaining counties had three terms annually. ORS 4.110 to 4.270. If we should hold that the statute is to be deemed a part of the constitutional provision concerning speedy trial, the result would be that in some counties of the state a defendant would be given a speedy trial if

tried within one year, while in other counties, notably Multnomah, he would be denied his right to a speedy trial if the cause were not tried within 60 days or less, depending on the time of the month at which the indictment was filed and the time in the second month at which the trial was had. The irony of the situation would be found in the fact that the period within which a defendant could be tried would be the longest in the rural counties where the pressure of business is the least, and the shortest where the docket is most congested. Constitutional provisions do not operate in that manner. The courts are extremely reluctant to hold that constitutional rights have been waived, yet this court had no hesitancy in holding that a defendant who failed to assert his rights under the statute, in the lower court, waived his right to make such a motion. *State v. Chapin,* 74 Or 346, 144 P 1187; *State v. Moss,* 92 Or 449, 181 P 347.

In *People v. Hartman,* 408 Ill 133, 96 NE2d 449, a proceeding was brought under the Illinois Post-Conviction Act (Ill Rev Stats, 1949, ch 38, par 826, et seq). It was the contention of the petitioner that he was entitled to a discharge because of an alleged violation of his constitutional rights in that he was not brought to trial within four months from the date of his commitment. Ill Rev Stats, 1949, ch 38, par 748. The court said:

> "It should be here noted that this statute providing for hearing after conviction is limited to constitutional questions and the denial of constitutional rights. * * *"

In its opinion the Supreme Court of Illinois clearly distinguished between the violation of the constitutional right to a speedy trial, on the one hand, and the violation of a statute which was passed for the

purpose of implementing constitutional provisions, on the other. The court said:

> "It is to be observed that the statute was enacted to give effect to section 9 of the Bill of Rights, securing to an accused in a criminal case a speedy trial. The constitution does not fix the time, and the statute is only intended to implement the provisions of the constitution, but a violation of the statute or of the procedure under the statute does not in itself create a constitutional question. People v. Maniatis, 297 Ill. 72, 130 N.E. 323."

Speaking of the constitutional provision, the court said:

> " * * * This constitutional requirement of a speedy trial has always been considered as a guarantee only against arbitrary and oppressive delays. People v. Utterback, 385 Ill. 239, 52 N.E.2d 775; People v. Maniatis, 297 Ill. 72, 130 N.E. 323; Weyrich v. People, 89 Ill. 90. * * *"

■ We hold that the first question for determination is whether the constitutional right to a speedy trial was accorded to the defendant. That phrase, as used in constitutions, has received repeated judicial construction. The question is whether the proceedings were free from "vexatious, capricious, and oppressive delays, created by the ministers of justice." *State v. Clark,* supra, 86 Or 464, 168 P 944. The determination of the issue is for the trial court, in the light of all of the circumstances in the particular case, and in the exercise of judicial discretion.

■ The authorities support our statement in the original opinion here that "Wholly apart from the statute * * * whether such a speedy trial has been afforded must be determined in the light of the circumstances of each particular case as a matter of judicial discretion. * * *" In view of the decisions of this

court construing the constitutional requirement of speedy trial and the rule of judicial discretion on the part of the trial court, reversible only for the abuse thereof, we hold that the evidence fails to present any abuse of discretion violative of constitutional right on the part of the trial court. The authorities concerning abuse of discretion as the only ground for reversing the judgment of the trial court will be fully set forth in our consideration of the meaning and effect of the statute ORS 134.120.

## THE RULE OF DISCRETION AND ABUSE OF DISCRETION

Before determining whether we should reverse or affirm the order of the trial court denying the motion to dismiss, we must ascertain the nature of the duty of that court and the function of this court in reviewing such orders under the provisions of the statute ORS 134.120.

In *State v. Bateham,* 94 Or 524, 186 P 5, this court said:

"* * * The case made by the state of 'good cause to the contary' appeals largely to the discretion of the trial court and we are not prepared to say from the record before us that the discretion was abused in this instance."

In *State v. Breaw,* supra, 45 Or 586, 78 P 896, this court said:

"The court has authority to postpone a trial of a criminal cause until another day in the same term, or to another term, upon the statement of the district attorney (B.&C. Comp. § 1379), and its action in so doing cannot be reviewed on appeal, except for an abuse of discretion: State v. O'Neil, 13 Or 183 (9 Pac. 284)."

In the early case of *State v. O'Neil,* 13 Or 183, 185, 9 P 284, this court, by Justice LORD, announced the rule concerning either the granting or refusing of a motion for continuance as follows:

"* * * From the nature of things, the court below is placed in a much more favorable position to see the case in all its connections, and is therefore better fitted to decide the propriety of the application, than the appellate court; and unless the decision is manifestly wrong and arbitrary, involving an abuse of sound discretion, this court will refuse to reverse it." Citing cases.

In *State v. Van Waters,* 36 Wash 358, 78 P 897, 898, the same rule was applied and the court added:

"* * * In matters in which the trial court is vested with discretion, error is never presumed, but, to be available, must appear on the face of the record."

In *State v. Barrett et al.,* 121 Or 57, 59, 254 P 198, this court said:

"* * * In passing upon motions preliminary to trial where questions of fact are involved, the trial court is in a better position to determine the fact than an appellate court, and for that reason, such questions of fact are not open for review upon appeal unless the error is palpable and there has been a clear abuse of discretion."

In *Johnston v. Circuit Court, Multnomah County,* supra, 140 Or 100, 104, 12 P2d 1027, we said:

"This court will not review the trial court's finding that the indictment should not be dismissed, for the reason that the defendant consented to the postponement of the trial, or that there was good cause shown why the indictment should not be dismissed unless error is palpable and there has been a clear abuse of discretion: * * *"

In *State v. Lee,* supra, 110 Or 682, 224 P 627, cited by the defendant on this point, the question determined was whether the discretion vested in the trial court in making a general order continuing cases because of lack of time to hear and dispose of the same showed an abuse of discretion. It was held that there was none.

■ Turning now to the provisions of the statute, we all agree that if a court, *without cause,* fails to bring an imprisoned defendant to trial at the next term of court after the indictment, he loses all discretion to continue the case. Such is the purport of *State v. Clark,* supra, cited by the defendant. But that is not the question here. Our question is whether the court abused its discretion in finding that there was good cause shown. In our former opinion we said that the case of *State v. Lee* "might well be misunderstood and create some confusion." A full examination of the original transcript and briefs in that case compels the conclusion that we failed to accord to the opinion in that case the controlling effect to which it was entitled.

In *State v. Lee,* supra, the defendant supported his motion for dismissal by an affidavit which negatived any consent by him to any continuance. A counter affidavit stated that criminal cases in which the indictment had been returned before the indictment of Lee, and all criminal cases in which defendants were held in custody, had been given precedence. The affidavit recited the general orders continuing pending cases at the end of each term, and stated that the delay was due to the congestion of the trial docket. The counter-affidavit failed to disclose whether the congestion was due to civil or to criminal cases. Circuit Judge Robert Tucker denied the motion. Answering the claim of

the state that the docket was congested, counsel for appellant, in his brief on appeal, said:

"* * * A congestion of the civil trial docket in the Court below is a condition we have always with us."

In *State v. Lee* one of the affidavits referred to the 5½ months which had elapsed between the indictment and trial and stated that six regular trial judges and most of the time two outside judges had been sitting in Multnomah county. He further listed the only days on which criminal cases were set and the days on which no criminal cases were set, and stated that there were many days during December, January and February on which the case could have been tried. The claim that a congestion of civil cases furnished no good cause for continuing criminal cases was placed directly before the trial court, and before this court by the record. This court said:

"The showing made by the defendant discloses that a number of days in the terms of court were permitted to pass in which no criminal cases were heard."

The court then recited the general orders continuing cases, and said:

"The force of this order is not overcome by anything of record. The law does not give criminal cases the 'right of way.'

* * * * *

"The right guaranteed by our fundamental law for a 'speedy' hearing applies alike to civil and criminal causes. * * *"

Concerning the general orders continuing all pending cases, we said:

"In the case at bar we have seen that the court made a general order continuing all cases until the

succeeding term, for lack of time in which to try them. The presumption is that the continuance was properly ordered: Johnson v. State, 42 Ohio, 207; State v. Mollineaux, 149 Mo. 646 (51 S.W. 462); Nichols v. Commonwealth, 91 Va. 741 (21 S.E. 364)."

The court said:

"In the case of Ex parte Larkin, 11 Nev. 90, 95, the court, by Hawley, C.J., after stating the principle that every defendant held on a criminal charge is entitled to a speedy trial which should not be denied him proceeds to say:

" 'But it does not necessarily follow that such trials are to be held regardless of the public condition of affairs that exists where the court is held. Ordinarily, the defendant is entitled to his trial as soon as it can properly be reached in its regular order upon the calendar, and the prosecution has had a reasonable time to prepare for the trial; but unforeseen events are liable to occur, making it absolutely necessary for a court to continue cases, even on its own motion; and whenever such events do occur, and the necessity for such order is clearly apparent, its power to so continue the case is undoubted.'

"To like effect, see State v. Hecht, 90 Kan. 802, 805 (136 Pac. 251).

"It is said by the editors of Ruling Case Law that:

" 'A delay made necessary by the usual and ordinary procedure provided by law in criminal cases is, of course, permissible. * * * Some events are not unlikely to occur, making it absolutely necessary for a court to continue cases, even on its own motion; and whenever such events do occur and the necessity for such order is clearly apparent, its power—at least in most states—so to continue the case is undoubted. Instances of such events are, want of time during the remainder of a

term to try the case on its merits; or the engagement of the judge in the trial of other cases, which extend beyond the time limited by law for holding the court * * *.' 8 R.C.L., p. 72, § 26.

" .'A defendant's constitutional right to a speedy trial is not *contravened by continuances in the discretion of the presiding judge; by hearing civil cases in advance of criminal cases, in the absence of a statute prohibiting it; by hearing another case having precedence over that of the accused; by delay occasioned by want of time to try the case; by accumulation of business rendering trial impossible;* * * or by other unavoidable circumstances.' 16 C.J. 445, 446.

 "To similar effect is the doctrine announced by this court in the cases of State v. Bertschinger, 93 Or. 404 (177 Pac. 63); State v. Bateham, 94 Or. 524 (186 Pac. 5.)." (Italics ours.)

Finally the court said:

"The discretion vested by law in the trial court has not been abused. The order of the court continued all cases, civil and criminal 'because of lack of time on the part of the court to hear and dispose of the same.' The verity of this order has not been overthrown.

"Under the facts in this case, the court's order constitutes 'good cause,' within the meaning of Section 1701, Or. L."

The state made no contention that the congestion of the docket was caused by criminal cases alone. In denying the motion, Judge Tucker was not so naive as to assume that in 5½ months the seven circuit judges in Multnomah county had not tried a single civil case. Both he and this court undoubtedly knew the contrary to be true. *State v. Lee,* supra, has been cited with approval in *Johnston v. Circuit Court, Multnomah County,* supra, and *State v. Swain,* supra. It

was also cited with approval in *State v. Moltzner,* 140 Or 128, 13 P2d 347; *State v. Weitzel,* 153 Or 524, 56 P2d 1111; and *State v. German,* 163 Or 642, 98 P2d 6. In the last three cases the opinions of this court cited *State v. Lee,* supra, in support of the general proposition that lack of time is in itself good cause for not dismissing the indictment. In the Weitzel and German cases the court said that the question is "settled and foreclosed" by the cases cited. The statement in the Lee case that the constitutional provision for speedy hearing applies alike to civil and criminal cases was expressly approved in *State v. Clark,* supra, 86 Or 464 at 471.

In *State v. Barrett et al.,* supra, 121 Or 57, 254 P 198, the indictment was returned in May, 1925, in Multnomah county. The trial was at the December term. On 14 December the defendant moved for dismissal and by affidavit stated non-consent to any postponement, and that there was no good reason for the failure to try him. Another affidavit, based on the contents of the criminal fee book showed that during June, September, October and November, 38 criminal jury cases were tried, and that there were days when a jury was obtainable and the case could have been tried. The counter affidavit is directed only to the point that the defendant agreed to the postponement. On appeal this court recognized that the only controverted issue related to the question of consent. It said:

"* * * In denying the motion the court must necessarily have found that defendant did consent to the postponement of the trial and from the showing made, the evidence was sufficient to sustain such finding and to warrant the court's denial of the motion. * * *"

In our original opinion we inadvertently cited the Barrett case as holding that where the record shows the cause that existed for continuance, the Supreme Court will consider whether the reason found is sufficient. We did not intend to imply that the issue was to be tried de novo in this court. In the Barrett case the order of the trial court merely recited that the motion for dismissal was denied. The court set forth no reasons in its order and then clearly laid down the rule which we have previously copied verbatim to the effect that when questions of fact are involved, the trial court is in a better position to determine the issue than the appellate court, and that such questions of fact are not open for review unless the error is palpable and there has been a clear abuse of discretion. The case was decided upon that issue.

In *State v. Bateham,* supra, 94 Or 524, 186 P 5, the defendant was indicted in Multnomah county on 30 June 1918 and tried on 20 December. On 4 December the defendant moved for dismissal and filed the usual sworn statement of non-consent to the continuance. In that case the defendant presented sworn testimony based upon the records which showed that only 28 criminal jury trials were tried within the county during the five months following his indictment. During one month no jury cases were tried because of an epidemic of influenza. At least six circuit judges were sitting in that county during this period. Thus the record shows that if criminal cases only were tried during the four months of delay, the average case per judge would be about five, or about 1¼ cases per month. The state presented evidence that under the rules of court, criminal and civil trial dockets were called, and cases set for trial in the order of their entry, with certain exceptions. This certainly raises

a strong inference that some civil cases were set for trial between 1 August and 20 December. The record made it apparent that if the docket was congested, it was not solely because of criminal cases, and of course the court, counsel, and this court knew that civil cases were tried during this period. On appeal this court, with the record before it, recited the showing by the state that the docket was so crowded with cases at issue and for trial that it was impossible to reach the defendant's case earlier. We recited the general orders continuing cases which were made at the end of each term, and commented upon the one month when no trials were held. We then said:

"* * * On the contrary we have lately decided in substance in State v. Bertschinger, 93 Or. 404 (177 Pac. 63), that an accumulation of undetermined cases is sufficient to prevent the discharge of the defendant, and this doctrine is supported by paragraph XI of the extended note to Ex parte Begerow in 56 L.R.A. 513. We cannot draw a conclusion favorable to the defendant from the fact that only seventy criminal cases were tried in the Multnomah Circuit Court during the period mentioned in the affidavit on that subject. To aid the Fabian policy of the defense, the showing of the state ought to be combated by sworn statements disclosing that there were times during the terms succeeding the return of the indictment when the court could have heard this case. * * *"

After examining the record before the court we held that the issue was whether there was any abuse of discretion, and none was found. There is not a syllable in the record or opinion to indicate that the accumulation of undetermined cases consisted of criminal cases only. Common sense tells us that it did not.

In *State v. Moltzner,* supra, 140 Or 128, 13 P2d 347,

four indictments were filed on 13 August 1931. On 17 November defendant moved for immediate trial of each or any of such indictments. On 20 November the deputy district attorney filed an affidavit showing the necessity for the completion of an audit of the accounts of a building and loan association, which audit had been in preparation ever since the return of the indictment, and which was not yet completed. The affidavit showed that the audit would be completed within two or three weeks and that counsel for defendant had also requested an audit. The affidavit concluded with a request that the case be set for a day certain in the month of January. On 24 November the defendant moved for the dismissal of the four indictments, relying upon the statute. On the same day the court made an order reciting the necessity for the audit of the books and that said audit would be completed in about three weeks, and setting the case for trial on 4 January 1932. On 30 November the court made an order finding that good cause had been shown; why the indictment should not be dismissed; and denying the motion for dismissal. On 21 December the defendant filed a second motion to dismiss, which was denied on the same day. On appeal this court considered the affidavit of the deputy district attorney concerning the necessity for an audit, although that affidavit had been made before the motion to dismiss was filed. The court said:

"Affidavits were displayed by counsel for defendant at the argument of this case to the effect that the orders of continuance made at the close of each term, as aforesaid, were entered pursuant to a practice which had prevailed for many years and that no judge had informed affiants that such order had been made. This is entirely insufficient to impeach the record of the court. In order to be con-

trolling, such impeachment must be made by the court itself.''

On the merits it was held that ''The character of the case supports the state's contention that the audit was essential * * *. The statement, that lack of time on the part of the court required a continuance of the unfinished business, is in itself good cause for not dismissing pending indictments: * * *'' In applying the foregoing rule no distinction was made between civil and criminal cases.

In *State v. Rosenberg,* 71 Or 389, 142 P 624, the defendant was indicted on 19 September 1912 in Clatsop county. Nearly a year and three months later he moved for dismissal which was denied. An affidavit of the district attorney stated that the defendant could have been tried at any of the terms of court. Since the record affirmatively showed that the court did have time to try the case, the order denying the motion to dismiss was reversed by this court. The facts would appear to present a clear case of the abuse of discretion. The decision does not weaken the authorities which we have previously reviewed.

In *State v. German,* supra, 163 Or 642, 98 P2d 6, thirteen indictments were returned on 21 April 1937. The cause arose in Multnomah county. On 29 September 1939 the defendant filed the usual motion to dismiss under the statute. The evidence on the motion showed that 64 criminal cases which had been filed after April 1937 were tried before 29 September 1939. In most of the cases so tried the defendants had been at large on bail. The usual continuing orders were made on the last day of each term. All of the cases were for larceny by bailee and involved the same legal issues. One of the thirteen cases was tried, resulting

in a verdict of guilty; a new trial; and a jury disagreement. The trial court held that the continuing orders were conclusive in the absence of misrepresentation, fraud or irregularity. The motion to dismiss was denied. Substantially all arguments presented in the pending case and some additional ones, were urged upon appeal and upon petition for rehearing. This court held that lack of time to hear pending cases constituted good cause and that the order continuing cases is an absolute verity. All other contentions of the defendant were rejected without discussion.

In *State v. Goldstein et al.,* 111 Or 221, 224 P 1087, a motion to dismiss was made under the statute and was denied. This court referred to the general order made at the close of the term and said that "such entry has been held to be sufficient."

The case of *State v. Bertschinger,* 93 Or 404, 177 P 63, is of especial importance. The indictment was on 1 June 1917. Motion to dismiss was on 13 December. The evidence showed that there was a stipulated continuance to the middle of October. It also showed that on September 1, civil and criminal cases had been set for trial up to the 15th of November and later in the same month civil and criminal cases were set for trial until the 30th day of November. The affidavit stated that the case could not be tried during November owing to the congestion of the docket. The motion to dismiss was denied. The fact that civil cases were set for trial during October and November while the Bertschinger case remained untried was before this court on appeal in both the transcript and a printed brief. This court said:

"* * * The record shows that the real cause of the delay was the congested condition of the trial

docket and that this case was actually set for trial on the first open date.''

In *State v. Chadwick,* supra, 150 Or 645, 47 P2d 232, the case arose in Harney county where there were only two terms of court a year. The delays were such as would seriously suggest a violation of the constitutional provision even if there had been no statute. The defendant was indicted in November of 1931. In January, 1934 he moved for dismissal. There was consent by the defendant to a continuance "until 'the next regular term' '" of court, to wit, April, 1933. The case was not set for the April 1933 term nor for the October 1933 term. In January, 1934, the defendant moved to dismiss. The motion was denied on 7 April 1934, the reason given by the court being based, not upon an exercise of discretion as to facts, but on a misapprehension as to the law. The court held that the continuance had been by tacit consent of the defendant and that the defendant had waived his rights. The court then made a prospective ruling to the effect that by reason of future judicial work to be done in other counties, the court would not have time to try the defendant during the term which continued until October, 1934. The case was then set for trial on 1 October 1934 but was not then tried. On 8 October 1934 the defendant again moved for dismissal and the motion was denied. The trial took place on 15 October 1934 and the defendant appealed from a conviction. This court observed that the case had gone over for two regular terms (one full year) without consent. We then said:

> "Ordinarily this court will not review the findings of the circuit court as to whether such good cause has or has not been shown: State v. Barrett, 121 Or. 57 (254 P. 198). But where the court recites

in its order the cause that existed why the case should be continued, then this court will consider whether the reason found by the court for the continuance is sufficient upon which to base an order denying dismissal of the indictments.''

The court held as a matter of law that express and not tacit consent was required to authorize the continuance, hence the reason given by the court was insufficient in law. The court also held that the trial court's order which predicted that the court ''will not have time'' in the future because of duties in other counties was not good cause. The judgment was reversed and the indictments ordered dismissed. The case bears no resemblance to those in which this court has given weight to discretionary orders of the trial courts, based on their judgment of the facts.

*State v. German,* supra, 163 Or 642, 98 P2d 6; and *State v. Weitzel,* supra, 153 Or 524, 56 P2d 1111, were decided after the decision of the Chadwick case. In *State v. Weitzel,* the opinion of this court shows only that the defendants did not consent to the continuance and that the trial court made the usual order at the end of the term continuing pending cases for want of time to try them. The court said:

''It is the contention of defendants that the orders continuing the case from one term to another were not sufficient to preserve the jurisdiction of the court. Lack of time on the part of the circuit court to hear the case against the defendants, and to dispose of unfinished business, is good cause for not dismissing the indictment against the defendants. This question is settled and foreclosed by the following cases: State v. Chadwick, 150 Or. 645 (47 P. (2d) 232); State v. Moltzner, 140 Or. 128 (13 P. (2d) 347); State v. Goldstein, 111 Or. 221 (224 P. 1087); State v. Lee, 110 Or. 682 (224 P. 627);

State v. Bateham, 94 Or. 524 (186 P. 5); State v. Bertschinger, 93 Or. 404 (177 P. 63). And it is not requisite that any additional or different reason be given.''

The court quoted ORS 134.120 and ORS 136.070. The last-mentioned section authorizes postponement ''upon sufficient cause shown'' by the affidavit of the defendant or the statement of the district attorney. The court then said:

''It is clear that the statute was never intended to divest the circuit court of jurisdiction to try a criminal case at a subsequent term when the court did not have time to hear such case at the prior term, and for that reason at the end of the term continued all cases until the next term.''

In *State v. Swain,* supra, 147 Or 207, 31 P2d 745, 32 P2d 773, this court, by Mr. Justice ROSSMAN, considered the application of ORS 134.110 which provides that:

''When a person has been held to answer for a crime, if an indictment is not found against him at the next term of the court at which he is held to answer, the court shall order the prosecution to be dismissed, unless good cause to the contrary is shown.''

The court then said:

''It will be recalled that February 17, 1932, the defendant was held by the district court to answer to the grand jury, and that during the March, April and May terms of the circuit court the court entered orders which, after stating that good cause had been shown, continued the charge against the defendant to the next term. These orders sufficed to supply the 'good cause' required by this section of our laws to prevent dismissal of the prosecution, and are not subject to collateral attack: State v. Moltzner, 140

Or. 128 (13 P. (2d) 347). We find no merit in this contention."

At this point we may well summarize the results of our investigation. The constitutional mandate for trial without delay applies to civil and criminal cases. That mandate is not violated if the case is conducted according to fixed rules, regulations and proceedings, free from vexatious, capricious, and oppressive delay created by the ministers of justice. The determination of that question is to be made in the light of the circumstances of each particular case as a matter of judicial discretion. In the pending case there has been no violation of the constitutional right as thus defined. Of the cases in which the impact of ORS 134.120 has been considered, the following support the statement that where questions of fact are involved, especially where the question relates to the congested condition of the docket as ground for continuance, the decision of the trial court is not open to review unless the error is palpable and there has been a clear abuse of discretion. *State v. Breaw*; *State v. Bateham*; *State v. Lee*; *State v. Barrett, et al.*; *Johnston v. Circuit Court, Multnomah County*; *State v. Chadwick*; all supra. The ruling in *State v. Moltzner*, supra, to the effect that affidavits attacking the general orders continuing cases for want of time are "entirely insufficient to impeach the record of the court" may well be construed as a further support of the same rule. The holding that lack of time to try pending cases constitutes good cause for continuance over the term is supported in *State v. Bateham*; *State v. Lee*; *State v. Moltzner*; *State v. Weitzel*; *State v. German*; all supra. The holding in *State v. Lee* that the constitutional mandate applies to civil and criminal cases alike is supported in *State v. Clark*, supra, 86 Or at 471. In none

of these cases is it indicated that the congestion must be of criminal cases only. Regardless of the burden of proof, the evidentiary presumption is that the continuance was properly ordered. *State v. Lee,* and cases cited therein. The original records in several of the cases which we have reviewed in detail show that this court had before it evidence that civil cases had been tried before the criminal case was set, and in some instances that there were days when no case was tried; yet the courts have held that the general order continuing cases was controlling and constituted good cause. No decision in this state has ever held that the rule is limited to an accumulation of criminal cases only. The broad holdings of *State v. Lee* have been frequently cited but never questioned or limited in any subsequent case.

In Oklahoma the statute is similar to ORS 134.120, and in *State v. Cole,* 4 Okla Cr 25, 109 P 736, 744, the court said:

> " * * * the question as to whether or not the court erred by giving preference to civil over criminal cases in the term, is one which we need not discuss other than to state that the regulation of the business of the term is a matter exclusively within the control of the district judge. * * * "

We recognize that there is a distinction between the rules governing civil and criminal cases. Civil cases may be continued over one or more terms without good cause shown, subject only to the limitations prescribed by the constitution, whereas criminal cases can be continued beyond the term following that in which the indictment was brought only on good cause shown. However, there is nothing in the statute which forbids a trial court, in the exercise of sound discretion, from finding that an accumulation of civil and

criminal cases already set (as appears in this case) constitutes good cause for continuance of a criminal case. The trial courts are certainly entitled to take notice of the condition of their own dockets. They have considered the entire record in passing upon motions to dismiss, and we too have considered the entire record, though we do so only to determine if there be an abuse of discretion.

We take judicial notice of the fact that trial courts have other and important duties beside sitting on the bench and trying jury cases. The practice of counsel who seek to overthrow the orders of the trial courts has been generally limited to a sketchy showing of the number of days in which the trial judge has sat upon the bench. We know that authorities must be examined; cases previously submitted must be decided within 90 days under the statute; and many quasi administrative duties concerning the handling of judicial business necessarily consume the time of every judge who is conscious of his duties. There are now eleven regular circuit judges in Multnomah county and two in Clackamas county, and we judicially know that one or more judges from other districts are frequently assigned to those counties and that judges pro tem have been serving from time to time. The marshaling of the judicial manpower of the state in an effort to reduce the congested condition of the dockets of Multnomah and other counties has been the avowed policy of the Chief Justices of this court. These are the methods by which the evils of delay may best be overcome.

There are many intricate and difficult problems confronting the circuit courts in the metropolitan areas; cases criminal, civil or special in nature, habeas corpus, mandamus, quo warranto, election cases, injunction

suits and cases involving constitutional and public questions which must frequently be decided before a legal deadline. We are profoundly convinced that it would be disastrous to lay down a rule under a statute which is not a part of the constitution, providing that all civil business before all of the judges sitting in the district must utterly cease, if necessary, in order that every criminal case in which there is no consent to continuance may be tried during the term following the term in which the indictment was returned, and in Multnomah county, during the month following the month in which the indictment was returned. In determining whether there is good cause for continuance under the statute, it is, of course, the duty of the trial court to consider the desirability that criminal cases be promptly tried, especially when the defendant is in custody. But this is only one of the matters which the court must consider in arriving at a sound conclusion under all of the circumstances of the particular case. We hold that the record in this case does not overcome the showing and the order which supports the finding of the trial court. There was no abuse of discretion.

This court has not laid down any clear and consistent rule on the issue upon which this court divided in our original decision of this case. The diversity of opinion arose from the view of some that the motion to dismiss was a direct, and of others, that it was a collateral attack on the general order continuing cases for want of time to try them.

In *State v. Lee,* supra, the continuing order was accorded verity but it was said "the verity has not been overthrown."

In *State v. Moss,* 92 Or 449, 460, 181 P 347, this court said of the trial judge denying a motion to dis-

miss: "As he had personal knowledge of all of the proceedings, we think his ruling is entitled to some weight."

In *State v. Clark,* supra, a general order continuing cases to the next term was made. We quote:

"* * * It is argued by defendants' counsel that no cause was in fact shown. The order of the court, however, is to the contrary and the recital there made and signed by the judge cannot be controverted in the absence of a bill of exceptions relating to the matter:" 86 Or at 473.

The language employed would indicate that the decision might be reviewed as to abuse of discretion if there had been a bill of exceptions.

In *State v. Goldstein et al.,* supra, 111 Or 221, 224 P 1087, all cases, civil and criminal, were continued over the term. This court said:

"In the absence of any showing to the contrary, and there is none, we assume that this record, made by a court of general jurisdiction, is a verity; and such entry has been held to be sufficient: State v. Bertschinger, 93 Or. 404 (177 Pac. 63)."

In *State v. Swain,* supra, this court, by Justice Rossman, held that a general order continuing cases for want of time constituted good cause and that such orders are not subject to collateral attack.

In *State v. Barrett et al,* supra, 121 Or 57, 254 P 198, the decision rested alone on the holding that there was no abuse of discretion. There was no discussion concerning direct or collateral attack.

In *State v. Gilbert,* 55 Or 596, 112 P 436, we held that the judgment roll imports verity and until impeached is conclusive. But in that case the question was what

the trial court had actually done—not why it had done it. The judgment roll failed to show under which of two indictments the defendant had been tried. The record was the only source of information as to what the trial court had done, and until the record showed that fact, this court was helpless to proceed. In the pending case, however, the question is not whether the court made an order continuing all cases. The question is whether the findings on which the rule was made also import conclusive verity. The same distinction which we have noted concerning the Gilbert case must also be noted concerning Ollschlager's Estate, 50 Or 55, 89 P 1049, cited in the pending opinion heretofore filed.

In *State v. Moltzner,* supra, this court said:

"* * * If such a statement, appearing as it does in the journal of the court, is false, or was inserted without authority, application to correct the entry should have been made to the circuit court. In the absence of any order expunging it, we are bound by it. 'Until impeached by the court, itself, it imports verity.' * * *" 140 Or at 137.

The original records on file in this case show that the contention of the defendant Moltzner was that no order continuing cases had ever been made, and it was that contention which elicited from this court the statement that the record, until impeached by an order "expunging" it, would import verity.

■ It is clear that if a judicial record recites that an order was made, which in fact never was made, the proper procedure would be to expunge the record. But here again the question is whether it is necessary to expunge the record when the order under attack was actually made and the complaint is that the reasons given for making it were insufficient. The lan-

guage of the Moltzner case unfortunately makes no distinction between the two situations. It occurs to us that it would have been impossible for the trial court to expunge the record in the pending case because the record truly shows the order which was in fact made. The Moltzner case cites Ex parte Jerman, 57 Or 387, 112 P 416, but this court failed to point out that the portion relied upon was found in a dissent. We have never heard of a proceeding to expunge an order which had in fact been made, nor have we known of a proceeding to expunge the reasons given by the court in an order which was in fact made. We think *State v. Moltzner* which was relied upon in the dissenting opinion herein was sound law. The order continuing did import verity. It constituted sufficient evidence that there was good cause for the order postponing all cases. We expressly held that the continuing order constituted good cause. It is, however, unfortunate that we intimated that a proceeding to "expunge" the order was the only means by which the correctness of the finding by the trial court could be tested.

In *State v. Chapin*, 74 Or 346, 349, 144 P 1187, the court expressly held that under the code "if the cause was not continued upon proper application, or unless good cause therefor was shown, it was incumbent upon the defendant to make a request to the court for such dismissal and obtain an order granting or refusing the same. * * *" It would be unusual for us now to say that the procedure followed in the pending case could not be employed to test the order because it constituted a collateral attack, when we had held in the Chapin case that the defendant's rights were waived because he had failed to follow the identical procedure.

█ The Restatement of Judgments clarifies the somewhat hazy judicial atmosphere concerning the distinction between direct and collateral attacks. We quote:

> "The taking of proceedings in the action in which a judgment is rendered to have the judgment vacated or reversed or modified by appropriate proceedings either in the trial court or in an appellate court is a direct attack upon the judgment.
>
> \* \* \*
>
> "Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceeding in equity to prevent its enforcement, the attack is a 'collateral attack.' \* \* \*" Restatement of the Law, Judgments, § 11, Comment a.
>
> " \* \* \* A direct attack on a judgment is an attempt to avoid or correct it in some manner provided by law, in a proceeding instituted for that very purpose, in the same action and in the same court; and the fact that other incidental relief is also asked is immaterial. \* \* \*" 49 CJS, Judgments, § 408, p 805.

Under the clear distinction drawn by the authors of the Restatement, and under the authority of the Chapin case. we think that the motion to dismiss which was filed in the action in which the order was entered constituted a proper method of raising the question. To hold otherwise would be to reverse the many cases previously cited in which the issue was raised in that manner. It is also the procedure commonly employed in other jurisdictions.

As stated in our original opinion, the motion to dismiss constituted a direct attack upon the correctness of the findings of the trial court. When this court has occasionally referred to collateral attack as

an additional reason for denying motions to dismiss in this type of case, we think it has intended no more than to say that we would not treat the question of good cause for continuance as res integra in this court unweighted by the finding of the trial court, but would consider only whether in deciding the issue, the court had abused its discretion. In thus construing the words occasionally used, we harmonize the numerous decisions which have been based upon the rule concerning abuse of discretion, with the few cases in which the court has intimated that the only direct attack would be a motion to expunge.

The only possible basis for a reversal of the decision of the trial court would be to hold that the trial during the April term of one or more noncriminal matters, before the trial of the Kuhnhausen case, amounted, as a pure question of law, to a violation of ORS 134.120, no matter when the noncriminal cases were set or how important or urgent they were and regardless of the condition of the docket. The statute imposes no such strict rule. We cannot read any such provision into the law and we refuse the invitation to lay down a court-made rule which would disrupt judicial business, especially in Multnomah county. If such a rule were announced, it would of necessity apply in all counties.

■ We draw the necessary conclusion that since the decision of the trial court was based upon its appraisal of the facts concerning the condition of the docket, the decision must stand. It is not tainted by any abuse of discretion.

It is argued that:

"In all trials for felony the prisoner must be personally present whenever any step is taken by

the court in his case, and this must affirmatively appear by the record. This right extends to all steps taken in the cause from the finding of the indictment up to and including the rendering of the verdict.''

This proposition is followed by the conclusion that since the record does not affirmatively show that the defendant was present in court when the general order was made on the last day of the April term, it follows that the order is void. We have examined the few cases cited by the defendant and can find no case, whether cited or not, in which any such rule has been applied to general orders continuing all pending cases because of lack of time to try them during the term just expired. Examination of our statutes will disclose that the personal presence of a defendant in a felony case is expressly required at arraignment (ORS 135.110) ; for the purpose of putting in bail if defendant requires it (ORS 135.190) ; and on pleading guilty (ORS 135.840). The statute provides that ''If the indictment is for a misdemeanor, the trial may be had in the absence of the defendant if he appears by counsel; but if it is for a felony, he shall appear in person.'' ORS 136.040. This section clearly refers only to personal appearance at the ''trial.'' There is no statutory requirement of personal presence at a hearing on demurrer (ORS 135.610) ; on postponement after the case is at issue (ORS 136.070) ; or on motion to set aside an indictment (ORS 135.510). The clear implication is that the statute has expressly provided for the defendant's personal appearance whenever such presence is deemed necessary. Except as otherwise provided, the right to be present applies only to all proceedings at the trial, and even this requirement has been slightly eroded by our decisions. The

general order continuing all cases was no part of the trial.

In *State v. Abrams,* 11 Or 169, a murder case, this court said:

"The next objection is, that the court below, on April 19, 1883, made an order during his absence setting the trial for a specified future day. But the appointment of a day for the trial to begin was no part of the trial, and was not a matter upon which he could have insisted to be heard, even if he had been present. The objection is clearly untenable."

In *State v. Moore et al.,* 124 Or 61, 262 P 859, this court, by Justice ROSSMAN, referred to the statute ORS 136.040 which requires the personal presence of the defendant at a felony trial. We reviewed the authorities and said:

"This statute, like the common law, undertakes to assure a defendant charged with a felony that his trial cannot be conducted in his absence. But preliminary and formal matters constitute no part of the trial and are therefore legal even though defendant was not present: * * *"

See also *State v. Savan,* 148 Or 423, 36 P2d 594; *Logan v. State,* 131 Tenn 75, 173 SW 443; *Kelly v. State,* 3 Smedes & M (Miss) 518; *Harris v. State* (Tex Cr) 28 SW2d 813; *Milton v. State,* 134 Ala 42, 32 So 653; *People v. Ferguson,* 124 Cal App 221, 12 P2d 158; *Wilson v. State,* 90 Okla Cr 180, 212 P2d 172; *Rigsby v. State,* 55 Okla Cr 61, 24 P2d 1016.

In *State v. Moltzner,* supra, this court commented upon affidavits to the effect that no judge had informed affiants that such an order had been made, referring to the general orders of continuance. This would indicate at least that no such order was made

in the presence of the defendant, yet the court said, "This is entirely insufficient to impeach the record * * * ."

In *State v. German,* supra, the right of the defendant to notice and hearing on the proposed general order continuing cases was forcefully presented in the brief of the defendant. We rejected the contention without discussion. A petition for rehearing complained of the failure of this court to consider the point. We denied the petition. The rule of *State v. Moore,* supra, is supported by reason as well as by authority. We think it would appear a little ridiculous to require that all defendants whose cases are pending and undecided on the last day of a term should be personally brought into court to hear the judge announce that there is no time to try pending cases at a term which ends on the day the order is made. The time at which a defendant has a right to challenge the propriety of the order continuing over the term is at the time when a motion to dismiss is heard.

In *State v. Le Flohic,* supra, 127 Minn 505, 150 NW 171, the phrase "good cause to the contrary" was held to refer to the cause shown upon the hearing of the motion to dismiss the indictment. The same rule was approved in *State v. Kloempken,* 145 Minn 496, 176 NW 642. The defendant lost no right to challenge the general order continuing cases. It was reserved to him upon his motion to dismiss. There can be no question concerning the right to challenge the general finding of good cause, by means of a motion to dismiss. It could hardly be argued that the statute would expressly authorize an appeal from an order refusing to dismiss an indictment unless the issue presented by the motion to dismiss could be litigated at the hearing thereof. ORS 138.040 expressly

authorizes an appeal to this court from "an order refusing to dismiss the indictment, as provided in ORS 134.120 * * *." See also 23 CJS, Criminal Law, § 974 b, p 307.

■ One question which has not been argued by either party requires comment. We have just quoted the material portion of ORS 138.040 concerning the right of appeal from an order refusing to dismiss an indictment. Under this statute the orders made in the pending case on defendant's motions to dismiss on 30 July and 18 August were final and appealable. The only notice of appeal actually filed in this case was from "the certain judgment against her (Kuhnhausen) on or about August 22, 1952", the judgment of conviction.

*In State v. Clark,* supra, this court said:

"* * * The neglect to prosecute appeals from the orders made in November, 1916, continuing both cases to the next regular term of the court, is a practice not to be commended. The renewal of the motions, June 11, 1917, their denial, and the taking of appeals from the latter orders necessarily continued the cases until they are finally determined by this court, thereby carrying the causes over two regular terms of the trial court. As all such delays usually conduce to the advantage of a defendant in a criminal action, *such procedure is not to be encouraged and will not hereafter be approved unless appeals are seasonably taken from the original denial of a motion for an immediate trial.*" (Italics ours.)

See also *In re Von Klein,* 67 Or 298, 300, 135 P 870; *State v. De Grace,* 144 Or 159, 164, 22 P2d 896.

In the following Oregon cases the appeals which established the law were taken, not from the final judgment of conviction, but from orders denying the

motion for dismissal of the indictment under ORS
134.120: *State v. Breaw,* 45 Or 586, 78 P 896; *State
v. Rosenberg,* 71 Or 389, 142 P 624; *State v. Hellala,*
71 Or 391, 142 P 624; *State v. Clark,* 86 Or 464, 168 P
944; *State v. Stilwell,* 100 Or 637, 198 P 559; *State v.
Lee,* 110 Or. 682, 224 P 627; *Johnston v. Circuit Court,
Multnomah County,* 140 Or 100, 12 P2d 1027; *State v.
Moltzner,* 140 Or 128, 13 P2d 347; *State v. Weitzel,*
153 Or 524, 56 P2d 1111; *State v. German,* 163 Or 642,
98 P2d 6.

While we are impressed by the soundness of the
view that a party should appeal from the first order
denying his motion to dismiss and should not be al-
lowed to put the state to the expense of a trial on the
merits while he gambles on the outcome, we have not
invoked the ruling of *State v. Clark,* supra, as being
solely decisive in this case because there have been a
few cases in which this court has permitted a de-
fendant to present the issue on his appeal from the
judgment of conviction.

■ This brings us to a consideration of the assign-
ments of alleged error at the trial on the merits. As-
signment of error No. 2 reads as follows:

"The Court erred in denying the motion for an
order requiring that appellant be tried on the orig-
inal indictment returned against her by the Grand
Jury on January 24, 1952."

In our original opinion we said that this assignment
is without merit. On further consideration we adhere
to that view. *Ex parte Jung Shing,* 74 Or 372, 145 P
637; *State v. Reinhart,* 26 Or 466, 38 P 822; *Thompson
v. United States,* 202 F 401; *United States v. Strewl,*
99 F2d 474; *State v. Janiec,* 20 NJSuper 471, 90 A2d
98; *Lastinger v. State,* 84 Ga App 760, 67 SE2d 411.

Assignment of error No. 3 is as follows:

"The Court erred in granting, over appellant's objections, the State's request that the witness Wampler be permitted to erect in the court room his own projector and screen, and to project on the screen a number of colored transparencies, (Ex. 17-24 inclusive, and 33) previously admitted in evidence."

Counsel for the defendant admitted that "pictures of the scene over there might be relevant" and "material." He objected upon the familiar ground that the transparencies would be gruesome. The authorities are reviewed in *State v. Long,* 195 Or 81, 244 P2d 1033. On the authority of those cases we hold that assignment of error No. 3 is without merit.

█ The last assignment asserts the absence of any substantial evidence of guilt and objects to the refusal of the court to grant a directed verdict. In our original opinion we said that "a careful review of the trial record convinces us that there was substantial evidence to support the verdict * * *." We adhere to that conclusion.

The former majority opinion in this case is withdrawn and the judgment of conviction is affirmed.

LATOURETTE, C.J., specially concurring.

For the reasons stated in my former dissenting opinion I concur in the result.

TOOZE, J., dissenting.

I dissent from the majority opinion and, in so doing, wish to reaffirm what was said in our original opinion. When that opinion was handed down, I was firmly convinced that the constitution and applicable statutes meant precisely what we then said they meant, and, in my judgment, they still have the same meaning.

I find nothing whatever in the present majority opinion that persuades me to believe to the contrary. The constitutional rights of an individual are a priceless heritage; they are fundamental. I like to look upon them as permanent and unchangeable. They should not be one thing today and something entirely different tomorrow.

Our original opinion was not the result of hasty and careless consideration. Its conclusions were deliberately arrived at and stated, but only after careful attention had been given thereto by all members of the court. In fact, in the course of its preparation, it was rewritten several times to accord with valuable suggestions made by, and to incorporate the views and represent the convictions of, each of the members of this court who subscribed to its final draft. Every proposition upon which the present opinion is based was then thoroughly considered and fully answered.

Three of my associates dissented from the original opinion. An examination of that dissenting opinion will disclose that it was based upon the sole contention that the matter before us involved a collateral, rather than a direct, attack upon the orders of the trial court, and, for that reason only, the objections raised by defendant could not be considered or sustained. No question was raised in that dissenting opinion as to the soundness of the conclusions reached by the then majority upon the merits. It is noteworthy, therefore, that in the present prevailing opinion the theory of the former dissenting opinion that we are here confronted with a collateral, instead of a direct, attack, is expressly repudiated; and it is correctly held, as we held in our original opinion, that this appeal does involve a direct attack upon the orders of the trial court.

In this case we are establishing law for the future guidance of district attorneys and the courts. Unfortunately, perhaps, we are here dealing with the constitutional and statutory rights of a defendant who has been found guilty by a jury. That finding of guilt is stressed somewhat in the majority opinion. But the fact of guilt, if it be a fact, should never deter us from correctly interpreting the constitution and statutes adopted pursuant thereto. We should not change the law merely to fit the facts of a particular case, no matter how revolting those facts might be. The constitution protects all alike, and the application of constitutional protections to individual rights is never made dependent upon the guilt or innocence of an accused. As we said in *State v. Bouse*, 199 Or. 676, 264 P2d 800, 805:

> "* * * As an appellate court, we are concerned only with questions of law in a case such as this; we do not retry the facts. The guilt or innocence of an accused person is a matter exclusively for jury determination. * * * In 16 CJS 579, Constitutional Law, § 199, it is stated:
>
> " 'The courts must ever be watchful to protect the personal rights guaranteed by state and federal constitutions. Constitutional rights cannot be made dependent on the favor of the court, but may be asserted as a matter of right.
>
> " '* * * * *
>
> " 'Constitutional guaranties pertaining to personal rights are available to all alike and should not be withheld in the slightest degree even from those under suspicion of violating the law.' "

It must be remembered that we are here establishing a precedent, and what we may say today to meet the exigencies of this case may rise tomorrow to smite us in the face when a more meritorious factual situation is presented.

In my opinion, the present majority of this court is announcing as the law certain rules which do not meet the demands of the constitution and statutes of this state, and which may, in their practical operation, prove dangerous to the established rights of individuals.

Stripped of its extensive argument, the prevailing opinion, as I interpret it, establishes the following rules:

1. That insofar as the time element is concerned, the constitutional right to a speedy trial applies with equal force to both civil and criminal cases, with neither having any right of preference over the other, and that the existence of civil cases upon a trial docket constitutes "good cause" for delaying the trial of a criminal case beyond the time fixed therefor by statute;

2. That the continuance of a criminal trial beyond the term of court in which the statute prescribes it should be tried, is solely a matter of judicial discretion, a discretion subject to being exercised upon the court's own motion, and that such continuance cannot be reviewed except for an abuse of discretion; and

3. That general and ex parte orders continuing the trial of all cases, civil and criminal, beyond the term in which the statute directs that a criminal case must be tried unless "good cause" exists for not so trying it, import verity as to the existence of such cause, and are valid and binding, even though the accused has not been afforded an opportunity to be heard as to such continuance by himself or counsel.

The rule first above stated constitutes the principal foundation for the prevailing opinion; its ultimate conclusion is dependent entirely thereon. The other rules are more or less subsidiary thereto.

The record reveals that defendant was arrested on January 18, 1952, and lodged in jail. She was jointly indicted with Williams on January 24. Her codefendant filed a demurrer to the indictment, which was sustained. In passing, I note that the majority attaches some importance to the delay caused by the filing of this demurrer (some 26 days), but it is obvious that defendant was in no way responsible therefor, nor did such delay, in fact, play any important part in this case.

The case was at issue on February 25, when defendant entered her plea of "not guilty". At that time, 34 days remained of the January term of court. On March 4, the district attorney requested that a trial date be set for the trial of the two defendants. It appears, therefore, that on March 4, the state was prepared for trial. It is assumed that defendants also were ready for trial, because at no time did either take any steps to delay the trial, except as defendant Kuhnhausen's motion for a separate trial, filed March 14, might be considered such a step. The statute gave her the right to file such a motion. When the April term of court commenced, the cases were at issue as to both defendant and Williams, as was known by the trial judge. The defendants were to be tried separately. The trial court also knew that both defendants were confined in jail upon a nonbailable offense, and had been so confined continuously since January 18. *He knew that under the express provisions of the statute both were entitled to be tried during the April term of court.* The state elected to try Williams first, and the court readily found a date for his trial during the month of April. That trial consumed approximately three days and terminated on April 20. At that time 71 days remained of the April

term, and although defendant languished in jail, she was not brought to trial because, it is claimed, there were civil cases set on the trial docket; *no contention has ever been made that there were any criminal cases on the docket for trial.*

*Vitally important, however, is the fact that on May 1,* according to the statement of the trial judge (made at the time of the hearing upon defendant's motion to dismiss the indictment), *the court set its calendar of cases for trial, and all of the cases so set were civil cases!* He did not set defendant's case for trial at that time, nor, indeed, did he do so until early in July, after the April term had expired. It taxes one's credulity to accept the proposition that no time could reasonably be found for the trial of defendant during the months of May and June, when approximately three days only were required therefor.

In the majority opinion, it is stated:

"* * * However, there is nothing in the statute which forbids a trial court, in the exercise of sound discretion, from finding that an accumulation of *civil and criminal* cases already set (as appears in this case) constitutes good cause for continuance of a criminal case. The trial courts are certainly entitled to take notice of the condition of their own dockets."

If the foregoing statement refers to cases where the district attorney applies, or the defendant moves, for a continuance, as provided in the statutes, I am in complete accord therewith. However, from a factual standpoint as applied to the instant case, the above statement is decidedly misleading. *In the case at bar, there was no accumlation of "civil and criminal" cases already set for trial;* there was an accumulation only of civil cases—cases which were evidently set for trial

on May 1, long after the case against defendant was at issue and ready for trial. Other than the Williams trial, no criminal case was tried to a jury during the April term of court (in fact, neither during the January or April terms of court), although during the January and April terms some 33 criminal matters were disposed of upon pleas. It is a matter of common knowledge (and to most members of this court, who have had extensive experience as trial judges, a matter of personal knowledge) that the disposal of criminal matters upon pleas, and without jury trial, does not seriously delay nor interfere with the orderly progress of the trials of civil or criminal cases then being heard; only a slight interruption occurs.

Defendant's case was finally set for trial for August 18, approximately seven months after she was first indicted. *And the only reason assigned for this delay when the matter was before the trial court upon defendant's motion to dismiss, was the existence of the civil cases upon the trial docket!*

The foregoing record squarely presented to us the question whether the existence of civil cases only on the trial docket constituted "good cause" for the delay within the meaning of the statute. We emphatically answered that question in the negative. *That was the principal issue then; it is the principal issue now.* To uphold the present majority opinion, it is necessary to reverse our former position. I have discovered no sound reason for so doing.

In our original opinion we pointed out that under the constitution guaranteeing to an accused a speedy trial (Art 1, § 10, Const of Oregon), and § 26-2002, OCLA (ORS 134.120), which gives effect to the constitutional provision (and the present majority opin-

ion concedes that much, quoting from decisions which so state), the trial of criminal cases does have some preference over the trial of civil cases. We noted the fact that there is no similar statute in this state applicable to civil actions. I do not intend to repeat all that was said upon that subject in our original opinion, but, for the sake of emphasis, I do wish to quote two statements contained therein. At page 703 of 266 P2d, it is stated:

"A defendant in a criminal action is, by this constitutional provision, guaranteed a speedy trial. [Citing cases decided by this court.]

"From the very earliest times the right of an accused person to a speedy trial has been recognized. In the United States it is guaranteed by constitutional and statutory provisions. *It is a fundamental right, and one not subject to judicial discretion.* It extends to all persons accused of crime, to the guilty as well as to the innocent." (Italics added.)

At page 705 of 266 P2d, we said:

"* * * There is sound reason for this preference. Civil cases usually have to do with problems of money, property, or status, whereas criminal cases involve the personal liberty, freedom, and often, life of the individual. Since Magna Charta the protection of life, liberty, and freedom of the individual has ever been the primary concern of the English-speaking world, the basis for and substance of the Bill of Rights incorporated into the federal and several state constitutions."

I am sure that my worthy associates who comprise the present majority in this case would not intentionally deny those fundamental truths. Yet that is exactly the effect of what they are doing when they hold that an accumulation of civil cases (not criminal, nor civil

*and* criminal) upon the trial docket was "good cause" for continuing the trial of defendant for a period of approximately six months after her case was at issue and ready for trial, and, particularly, for continuing it beyond the term in which the statute specifically directs that it should have been tried.

In our original opinion we did not intend to, nor did we, say that the preference given to the trial of criminal cases, was under all conditions absolute; nor that this right of preference should be exercised in total disregard of the trial of civil cases. We did intend to say, and, in effect, did say that in the light of the record in this case, this criminal proceeding did have a right of preference as to trial during the April term of court over the list of civil cases on the trial docket, and that "in order to afford the defendant a speedy trial in this case, and to thus preserve and protect her constitutional right, it was the duty of the court, *if necessary,* to take one or more of the civil cases off the docket". We also said: "The fact that a number of civil cases has been set for trial is no valid excuse for the failure to set promptly a criminal case that is at issue, *if necessary to comply with the mandatory provisions of the statute".* (Italics added.) To that extent only did we apply the rule of preference. Although much more was said in our original opinion, the foregoing constituted the sole basis for our ultimate conclusion. The present majority opinion necessarily rejects that holding; otherwise, it would have no foundation upon which to build. In taking that position, I think the majority has erred.

Considerable attention is given by the majority to the case of *State v. Lee,* 110 Or 682, 224 P 627. In our original opinion we noted certain general statements

contained in *State v. Lee*: 266 P2d 705. Our discussion of that case followed immediately after we had made the statements above quoted. We said:

"We are not unmindful of what this court said in State v. Lee, 110 Or 682, 684, 224 P 627. * * *

"* * * * *

"We acknowledge the fact that the unequivocal statement that 'The law does not give criminal cases the "right of way"', and the further statement that 'the right guaranteed by our fundamental law for a "speedy" hearing applies alike to civil and criminal causes', might well be misunderstood and create some confusion."

In my opinion the present majority holding clearly demonstrates such misunderstanding and confusion. As abstract propositions, it is true that neither the constitution nor any statute expressly gives the "right of way" to criminal cases; and it also is true that "the right guaranteed by our fundamental law for a 'speedy' hearing applies alike to civil and criminal causes". If all we had to consider was the single constitutional provision that "every man" has the right to have "justice * * * administered openly and without purchase, completely and without delay", and there was no statute applying to criminal trials such as § 26-2002, OCLA (ORS 134.120), we might well accept the statements in *State v. Lee* literally, and so apply them. But we cannot take and apply those statements in a literal sense without doing violence to basic purposes of the Bill of Rights, and, specifically, to the mandatory provisions of the statute.

The interpretation we placed upon the constitutional and statutory rights of the defendant in our original opinion was in keeping with natural right; it

carried out the established public policy of this state. Section 2-223, OCLA (ORS 174.030) provides:

"Where a statute is equally susceptible of two interpretations, one in favor of natural right, and the other against it, the former is to prevail."

When all is said and done, it is manifest that in our former opinion we simply weighed the relative rights of the private litigant in a civil case as against those of an accused in a criminal proceeding (one involving a nonbailable offense), and gave preference as to the right of a speedy trial to the accused insofar as that was *necessary* to comply with the constitution and the statute. The effect of the present majority opinion is to completely reverse that concept of the administration of justice. In lieu of the rule of preference as to the trial of a criminal case as we originally stated it, the majority is, in a real and practical sense, substituting a rule which, under the facts in the instant case, and in its operation, actually gives preference to the trial of civil cases, notwithstanding the plain demand and effect of the statute to the contrary. § 26-2002, OCLA (ORS 134.120).

I note the following statement in the majority opinion:

"Turning now to the provisions of the statute [§ 26-2002, OCLA], we all agree that if a court, *without cause,* fails to bring an imprisoned defendant to trial at the next term of court after the indictment, he loses all discretion to continue the case. Such is the purport of State v. Clark, supra, cited by the defendant."

Of course, the statute does not speak of "cause", but of "good cause". If "good cause" for the continuance does not exist, the court does not "lose" any

discretion, because it has no discretion to lose; but it does have a mandatory duty to perform; that is, to dismiss the indictment.

The holding in *State v. Clark,* 86 Or 464, 470, 168 P 944, referred to above, is particularly apropos to the problems confronting us in the instant case. After quoting Art 1, § 10, Const of Oregon, and what are now §§ 26-2001, OCLA (ORS 134.110) (referring to the prompt return of indictments) and 26-2002, OCLA (ORS 134.120), this court, speaking through Mr. Justice MOORE, said:

"In speaking of the right of a defendant in a criminal action to a prompt hearing, which is guaranteed by organic law and statutory enactment, a text-writer remarks:

" 'In theory, at least, the right to a speedy trial may be said to have been recognized at common law in very early times. * * This constitutional provision, adopted from the old common law, is intended to prevent the oppression of the citizen by holding criminal prosecutions suspended over him for an indefinite time; and to prevent delays in the administration of justice, by imposing on the judicial tribunals an obligation to proceed with reasonable dispatch in the trial of criminal accusations': 8 R.C.L. 70. See, also, 12 Cyc. 498.

"*The clause of our Constitution* hereinbefore quoted, evidently *applies to the trial* 'without delay' *of all causes and not particularly to criminal actions.* Article I, Section 11, of the Constitution of Oregon, declares, however, that 'In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed.' Though a 'speedy trial' is not expressly assured by our fundamental law, the command therein that justice shall be administered 'without delay' is so nearly synonymous, that the later phrase, when

construed in connection with the statutes herein-before quoted, will be treated as guaranteeing the right to a speedy trial. Such an examination by a judicial tribunal is a trial conducted according to fixed rules, regulations and proceedings of law, free from vexatious, capricious and oppressive delays, created by the ministers of justice: 6 Am. & Eng. Enc. Law (2 ed.), 993; Nixon v. State, 2 Smedes & M. (10 Miss.) 497 (41 Am. Dec. 601); State v. Keefe, 17 Wyo. 227 (98 Pac. 122, 17 Ann. Cas. 161, 22 L.R.A. (N.S.) 896).

"*The constitutional and legislative guarantee* of a speedy trial to a party formally charged with the commission of a crime, *necessarily deprives a court of all discretion in delaying, without cause, a hearing,* and before such right can legally be denied *it must affirmatively appear from an inspection of the record made by the court that a reasonable cause for a continuation of the trial existed*: 12 Cyc. 499; In re Begerow, 133 Cal. 349 (165 Pac. 828, 85 Am. St. Rep., 178, 56 L.R.A. 513, 528); State v. Rosenberg, 71 Or. 389 (142 Pac. 624); State v. Hellala, 71 Or. 391 (142 Pac. 624)." (Italics mine.)

It will be noted that the court made a statement quite similar to that later made in *State v. Lee,* supra, but it immediately qualified it. It also will be observed that Justice MOORE did not speak of the court ".'losing" discretion; he said that "*the constitutional and legislative guarantee* \* \* \* necessarily *deprives* a court of all discretion in delaying, without cause, a hearing". (Italics mine.) In other words, it has no discretion in the matter; a strict rule of constitutional and statutory law governs.

The plain import of the above discussion by the court is to establish the proposition that much greater importance must be and is attached to the right of a speedy trial in a criminal case than to such right in a civil proceeding.

Let us briefly consider the effect of an established rule that the trial of a criminal case (particularly one involving a nonbailable offense) does not take precedence over the trial of civil cases.

Under this rule a court with hundreds of civil cases at issue and ready for trial (and this situation actually prevails at times in Multnomah county), could set them for trial in order, and try all of them, as set, without regard to the criminal cases later brought to issue, but which are pending. The trial of the criminal cases could thus be continued indefinitely because of the congested trial docket. To justify this continuance of the criminal trials, all that the court need do is to enter a general and ex parte order of continuance at the end of each term, reciting the congested condition of the trial docket—an order made without affording defendant or his counsel in the criminal proceeding an opportunity to be heard. Such an order will import "verity", and, according to some of our decisions, "absolute verity"; this truly creates an "iron curtain".

And during all this time, what becomes of the constitutional and statutory rights of an accused person to a speedy trial, and, specifically, of an accused person confined in jail upon a nonbailable offense; an accused who may in truth be innocent, but whether guilty or innocent, one who supposedly was protected by the fundamental law?

It may be said that the supposed situation is not likely to happen; but under the rule being established by the majority opinion, it could happen. The soundness of a rule is never tested by what is likely to occur; it is tested by what might occur. It was to provide against just such a possibility that the legislature adopted the mandatory provisions of § 26-2002, OCLA

(ORS 134.120). The legislature did not intend to leave the question of the enforcement of an accused's constitutional right to a speedy trial to rest upon the shifting sands of judicial discretion. I again quote the statute:

> "If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, be not brought to trial at the next term of court in which the indictment is triable, after it is found, the court *must* order the indictment to be dismissed, unless *good cause* to the contrary be shown." (Italics mine.)

It is evident that when a motion to dismiss an indictment for lack of prosecution is filed, the burden, under the statute, is placed upon the state affirmatively to show good cause for the continuance beyond the term; the burden is not upon the defendant to establish the absence of good cause. This court has so held: *State v. Bateham,* 94 Or 524, 527, 186 P 5. If "good cause" is not, in fact, established, the indictment *must* be dismissed. *The court has no discretion in the matter.*

The complete record of the state's attempt to show good cause for not trying defendant during the April term of court, as the statute directed, is before us in the bill of exceptions. By no process of sound reasoning or rule of justice could we be denied the privilege of examining that record and determining therefrom whether "good cause", in fact and in law, existed. We cannot be blindfolded by some fine-spun theory of judicial discretion or collateral attack. Most of our prior decisions in which it was stated that the general orders of continuance imported verity, qualified them by giving effect thereto only *"in the absence of any showing to the contrary"*. Here the record before us

affirmatively shows the absence of "good cause", unless, as the majority now seemingly holds, the presence of civil cases exclusively upon the trial docket constituted such a cause.

Section 26-2002, OCLA (ORS 134.120), supra, deals only with *a maximum time limit* for bringing a criminal case to trial; it has nothing whatever to do with a minimum time limit. As to a minimum time limit under the constitutional guaranty of a speedy trial, each case must necessarily be decided upon its own peculiar facts and circumstances, in the light of the applicable law and wholly apart from the statute. In my opinion, it is only in those cases where the maximum time limit under the statute is not involved that the question of an exercise of judicial discretion might arise.

However, in all cases where there is a strict rule of law applicable, as there is under § 26-2002, OCLA (ORS 134.120), the courts are bound to enforce the rule, and discretion is at an end. "Discretion" is defined in *State v. Lewis,* 113 Or 359, 364, 232 P 1013, as follows:

"Discretion is the power exercised by courts to determine questions to which no strict rule of law is applicable, but which from their nature and the circumstances of the case are controlled by the personal judgment of the court: Bouvier's Law Dict. *It cannot be exercised where a strict rule of law is applicable* as the term 'discretion' implies the absence of any such rule. Where there is a clearly defined and well-settled applicable rule of law the courts are bound to enforce the rule and discretion is at an end." (Italics mine.)

See also *State ex rel. Ricco v. Biggs,* 198 Or 413, 422, 255 P2d 1055; *State ex rel. Bethke v. Bain,* 193 Or 688, 702, 240 P2d 958.

Much is said by the majority about "discretion" and "abuse of discretion" in connection with the continuance of criminal trials. It is claimed that the finding of "good cause" by the trial judge was a proper exercise of judicial discretion, and his determination cannot be disturbed except for an abuse of such discretion.

All will agree, I am certain, that an exercise of judicial discretion is involved in all cases where an application is made by the district attorney or a motion is filed by an accused, for the postponement of a criminal trial pursuant to the provisions of § 26-905, OCLA (ORS 136.070). The action of a trial court upon such an application or motion cannot be disturbed except for an abuse of discretion. That is what is held in *State v. Breaw,* 45 Or 568, 78 P 896, and *State v. O'Neil,* 13 Or 183, 9 P 284, quoted from by the majority. In *Johnston v. Circuit Court, Mult. Co.,* 140 Or 100, 12 P2d 1027, and *State v. Barrett et al.,* 121 Or 57, 254 P 198, also quoted from by the majority, the issues were somewhat different from those present in this case.

It is conceded that upon the hearing of a motion to dismiss an indictment for lack of prosecution, *if the facts are in dispute,* a finding of "good cause" by the trial court, based upon the evidence, involves an exercise of judicial discretion, and such finding cannot be disturbed except for an abuse of discretion. That is what we held in *State v. Barrett et al.,* supra. It also is the effect of our decision in *State v. Bateham,* supra.

In *State v. Barrett et al.,* the defendant was convicted and he appealed. Prior to his trial he moved for a dismissal of the indictment for lack of prosecu-

tion, basing his motion upon what is now § 26-2002, OCLA (ORS 134.120), supra. His motion was supported by affidavits tending to show that the trial had not been postponed on his application or with his consent. Contrary affidavits were filed on behalf of the state, tending to show that he had expressly requested and consented to the postponement. *A disputed issue of fact was there presented to the court for decision.* The court denied the motion, but in doing so, it necessarily found that defendant did consent to the postponement. In disposing of this matter, Mr. Justice RAND, speaking for the court (page 59 of 121 Or), said:

" * * * In passing upon motions preliminary to trial *where questions of fact are involved,* the trial court is in a better position to determine the fact than an appellate court, and for that reason, *such questions of fact* are not open for review upon appeal unless the error is palpable and there has been a clear abuse of discretion." (Italics mine.)

In *State v. Bateham,* supra, defendant appealed from a conviction for an offense committed in Multnomah county. He was indicted on July 30, 1918, and tried on December 20 of that year. He entered his plea to the indictment, and the case was at issue in August. The June term of the Multnomah county circuit court extended to the first Monday in September. He was not tried in the next succeeding term (October), nor in the November term. His trial was set for December 3. At that time he moved to dismiss the indictment for lack of prosecution, pursuant to the provisions of what is now § 26-2002, OCLA (ORS 134.120). He supported his motion by affidavit to the effect that the delay of the trial was not due to his application or with his consent. It was also

made to appear "that only seventy criminal cases were tried in the Multnomah county circuit court during the period mentioned in the affidavit on that subject". The state opposed the motion by affidavits disclosing in substance that the trial docket of the circuit court was so crowded with cases at issue and for trial that it was impossible to reach the defendant's case earlier; *"that at the end of each term the court had made a general order continuing all unfinished business to the next following term for the want of time to dispose of it*; and that owing to the prevalence of influenza and in deference to the requirements of the board of health no jury had been summoned for the November term." (Italics mine.) On the appeal, this court dealt first with the alleged error in the denial of the motion to dismiss the indictment. In discussing that question, Mr. Justice BURNETT, in part, said (page 527 of 94 Or) :

"The crucial question is whether the state has brought itself within the exception embodied in the last clause of Section 1701, L.O.L. [§ 26-2002, OCLA], 'unless good cause to the contrary be shown.' *If no cause is shown by the state, the defendant is entitled to have the indictment dismissed as of course.* * * * We cannot draw a conclusion favorable to the defendant from the fact that only seventy criminal cases were tried in the Multnomah Circuit Court during the period mentioned in the affidavit on that subject. To aid the Fabian policy of the defense, *the showing of the state ought to be combated by sworn statements disclosing that there were times during the terms succeeding the return of the indictment when the court could have heard this case.* The case made by the state of 'good cause to the contrary' appeals largely to the discretion of the trial court and we are not prepared to say from the record before us that the discretion was abused in this instance." (Italics mine.)

Here again the trial court, in passing upon the motion to dismiss, was required to consider and decide upon the facts. It is obvious that the facts set forth in the affidavits filed by the state, if accepted as true by the trial court, established "good cause to the contrary". In passing upon those facts as a preliminary to the order denying the dismissal, the trial court necessarily exercised a judicial discretion.

*But in the instant case, the facts are undisputed!* There are no conflicts in the evidence. It follows, therefore, that the only question for determination is whether those undisputed facts constitute "good cause to the contrary" *as a matter of law.* The finding of the trial court that they did constitute "good cause" for the continuance beyond the statutory limit, *is a legal conclusion*; it is not a finding of fact based upon disputed testimony. Hence, in the light of the undisputed facts, no occasion arose for an exercise of judicial discretion. With a strict rule of law applicable to the undisputed facts (§ 26-2002, OCLA, supra), the trial court was bound to apply the rule; it had no discretion to do otherwise. This principle of law is axiomatic in this state. See *State ex rel. Bethke v. Bain,* supra, and *State ex rel. Ricco v. Biggs,* supra, and the authorities therein cited. The applicable rule is succinctly stated in *State ex rel. Bethke v. Bain,* supra, at page 703, as follows:

"However, where the facts are not in dispute, and there exists a strict rule of law that is applicable, no question of 'judicial discretion' arises. The trial judge is under the positive duty of correctly applying the applicable rule of law."

In quoting from the record of proceedings occurring upon the hearing of the motion to dismiss the indictment, the majority has quoted those portions

only which it apparently believes are necessary to support its position. It overlooks some very important parts of that record. I deem those portions of the record now to be referred to far more important to a determination of the basic issue in this case than what is quoted by the majority. I now quote from the record:

"MR. JACOBS [Defendant's attorney]: Now, as to the reason I have set forth in the affidavit, and probably it is my own opinion as to why the case wasn't brought to trial in the last term of Court, was, we know that Mr. Lindas [then district attorney] was conducting a campaign for attorney general which took a lot of his time and, likewise, he had the right to do that, but the defendant should not be penalized because of that, and we are contending that she has been here without bail, your Honor, since January 18 in the County jail and will be here until this case is tried on August 18, and I think that is an unreasonable time and that the defendant should be discharged from custody.

"MR. BRADSHAW [Present district attorney]: * * * Mr. Jacobs made a statement in regard to the thirty-three other cases that the District Attorney's office has taken through the courts. *I wish to point out to the Court that none of those cases involved were tried. These two cases* [Williams and Kuhnhausen], *I think, are the only cases outside of one other case, the Kruger case, that we have requested trial dates for in the past two terms.*" (Italics mine.)

The trial court itself called and interrogated a deputy county clerk as a witness. The following testimony was given:

"Q (By the court) Mr. Santos, are you aware since the first of the year, 1952, approximately how long a period of time has elapsed between the trial dates and the actual setting of those cases by me

down for trial on the average? In other words, how far have I been setting them in advance?

"A Oh, it has averaged about two or three months.

"THE COURT: I usually set cases on the first of each month and normally that case would have been set for trial the first of June. As I recall, there was one period when I was set so far in advance that I did not set on the first of the month, but I waited for a two months' period to elapse, and I am not sure, but I believe that was the time, so I don't believe I set this until the first of July. Mr. Santos, do you have any recollection or record when that letter dated May 19 was delivered by me to you?

"THE WITNESS: No, I don't.

"THE COURT: Other than the fact that you believe it must have been immediately prior to the notice which was sent out on State Exhibit 3 which is July 3, which would bear me out in my belief that I did not set cases on the first of June because I was set so far in advance, and I waited for two months to elapse. My recollection is, Mr. Jacobs, that I didn't set cases on the first of June. *I set them on the first of May,* and I was set so far in advance that I waited until the first of July because, as I recall, I was set for close to three months in advance at that time." (Italics mine.)

Mr. Jacob's statement (in his affidavit, and in open court) about the political campaign of the then district attorney being the cause for the failure of trying defendant during the April term was not disputed by the trial judge nor by the present district attorney. It will be a sorry day, indeed, when we recognize the political activity of a prosecuting official as "good cause" or any part of "good cause" for not promptly bringing an imprisoned defendant to trial. Notwith-

standing, that is not the really important thing developed by the foregoing record.

That record conclusively shows, and I wish to emphasize the fact again, *that on May 1,* when the court states it set cases for trial three months in advance (accounting for the court's failure to follow its usual practice and set cases on June 1), *the defendant's case had long been at issue and ready for trial;* her codefendant had already been tried. Why was it that her case was not set for trial on May 1 when the trials of the civil cases were set? No explanation whatever appears in the record for its not having been set at that time! A demand by the district attorney that it be set was not required by any statute of this state. Section 26-2002, OCLA, supra, itself made the demand, and it was a continuing demand. *State v. Chadwick,* 150 Or 645, 47 P2d 232. It was the court's positive duty to see that the mandatory requirements of the statute were met; it was not a matter of judicial discretion. But, in evident disregard of defendant's constitutional and statutory guaranty of a trial during the April term (two months of which remained on May 1), the trial court, on May 1, set the trials of civil cases exclusively for a period of three months in advance and into the next term of court. Hence, on May 1 the court created its own congested docket of civil cases, which, it is now claimed, constituted "good cause" for the continuance of defendant's trial. Are the constitutional and statutory rights of an accused to be so easily evaded and denied, and, particularly, the rights of a defendant who had for months been continuously confined in jail? Under no reasonable theory could that be deemed an exercise of judicial discretion. It was simply the failure to perform an absolute duty. *In re Von Klein,* 67 Or 298, 135 P 870.

As before observed, no good reason, nor, in fact, any reason whatever, is assigned for not including defendant's case in the list of cases set for trial on May 1, unless the political activities of the then district attorney be considered some sort of reason. *On May 1 no other criminal case was pending and awaiting trial.* Despite this record, it is now calmly announced in the prevailing opinion that the trial court properly exercised a judicial discretion in continuing defendant's trial beyond the term fixed therefor by positive rule of law. Judicial discretion! Is there no limit to the excusable errors that may be committed in thy name?

The rule we established in our original opinion, but which the majority now rejects, to-wit: that the trials of criminal cases do take precedence over the trials of civil cases to the extent *necessary* to comply with the constitution and statute, is not exactly a one-way proposition. As was recently stated in Portland by a noted U. S. District Judge of the Eastern District of Michigan: "The public has the right to demand that an accused person shall have a speedy trial * * *. Certainty of prosecution and prompt punishment are more effective deterrents than heavy sentences." It is manifest that the public has no such direct interest in the speedy trial of civil cases in general. To further the interests of the public in the speedy trial of criminal cases is the principal purpose of the restrictions placed upon the postponement of such trials by the provisions of § 26-905, OCLA (ORS 136.070).

I deem it unnecessary to further discuss this point. In my opinion, the rule sought to be established in the prevailing opinion, which denies any right of priority for the trials of criminal cases over those of civil cases, is fraught with danger to the rights and liberty

of individuals; it is a rule which I believe will prove to be inimical to the public's best interests, a rule that cannot be justified in the light of the plain meaning of the constitution and statutes.

The ex parte order for continuance in this case, and upon which the majority so strongly relies, has for its sole ground of "good cause" therefor the presence on the trial docket of civil cases only, cases set for trial on May 1. The prevailing opinion must stand or fall upon the premise that such is "good cause", *as a matter of law*. That is the issue.

I have before me the published comment of a distinguished member of the legislative assembly of this state concerning our original opinion. It is so pertinent to what I have in mind that I adopt it as my own. I quote:

"Such a provision [for speedy trial] was included in the original bill of rights as amendment VI to the United States Constitution and was founded on historical background. In totalitarian countries, where the citizen has no such protection, accused persons have been known to languish days, months and years without being brought to trial. *Once the principle of speedy trial in criminal cases is qualified or modified even indirectly, the protection has lost its meaning,* and if a person can be held three months without trial, his case could be postponed six months, or longer, depending upon the whim or other activities of local officials. *The principle must stand or fall as such, and its application cannot depend merely upon the degree of the violation."* (Italics mine.)

The prevailing opinion devotes much space to a discussion of the relationship between the constitutional provision and § 26-2002, OCLA. It seeks to establish the proposition that we were in error in our original opinion when we said that the statute con-

stituted the legislative construction and definition of the constitutional provision, and that, having been adopted contemporaneously with the adoption of the constitution, it must be read into and considered a part of the constitutional guaranty. That, in effect is substantially what was said in *State v. Clark,* supra. I abstain from discussing that proposition in this opinion, because, whether right or wrong, it has nothing to do with the basic issue in this case. However, by not discussing it, I do not wish to be understood as subscribing to the views now announced.

I have frequently mentioned the ex parte orders of the trial court continuing the trials of cases. By so doing, I have not intended to concede their validity for any purpose connected with this case. In my opinion, the ex parte order entered by the trial court at the end of the April term, under which it is contended defendant's trial was properly continued, and which order was made without first affording the accused or her counsel an opportunity to be present or heard, directly affected a substantial right of the accused and constituted a denial of her constitutional right to be heard by herself and counsel (Art 1, § 11, Const. of Oregon), and is, as to her, absolutely void and of no effect. I refrain from giving my detailed reasons and authorities for this conclusion simply because I am advised that one of my associates proposes to discuss that phase of the problem, and he and I are in complete accord upon the question.

I adhere to our former opinion.

ROSSMAN and PERRY, JJ., concur in this opinion.

ROSSMAN, J., dissenting.

The opinion of this court as first announced gave effect to a principle of constitutional law which the

Anglo-Saxon, seven hundred years ago, deemed so vital that he wrote it into the Great Charter. Few of the cherished rights that protect those accused of crime can boast a heritage equally long and illustrious. The most unlettered man in the street, living amid our maze of laws, always has in mind that, if he becomes ensnared in our complex legal system, the State guarantees him a speedy trial. Constitutional rights are not to be apportioned by allotting a large portion to those whose guilt is conjectural, but only a small droplet to those who stand bereft of the mantle of innocence.

It is incumbent upon us to examine closely the justification which is offered for the holding whereby this court on this day reverses its former decision. Those who in the days to come will sit as our successors upon the bench which we now occupy will deem that this was an evil day if we now become oblivious to the rights of the accused, turn our backs upon Magna Charta and proclaim that a basic protection from the tyranny of the State has faded out of our constitution.

We must not assume that this defendant is the only person whose interests are at stake. Others may languish in jail for periods longer than hers. But let us for the moment forget about the accused. No less a person than William Howard Taft declared, ''The administration of criminal law in this country is a disgrace to our civilization.'' The principal reason why administration of the criminal law is a disgrace is because of the long delay which attends its enforcement. Normally, a long wait occurs after an accused has been indicted and before he is brought to trial. The most practical way to rid the criminal law of its disgrace is to try criminal cases promptly. Soon after our original opinion was announced, the newspapers began publishing items indicating that because

of the holding in this case courts and prosecuting attorneys were seeing to it that pending cases were set for trial. We were on our way to improvement, but today we lapse back to the condition which caused Mr. Taft to declare, "The administration of criminal law in this country is a disgrace."

The prevailing opinion holds that, in the purview of constitutional provisions which guarantee speedy trial, a criminal case has no preference over a civil one. A judge who entertains that view will merely count his cases, but will not take note of their nature or relative importance. He will operate like a piece-worker. In that view of the matter, one whose interests are subject to the paralyzing effect of an injunction will fare no better when a docket is set than a litigant such as John Jarndyce of Bleak House. Obviously, if we are justified in our boast that we are civilized and that our courts administer justice, we must hold that the case of a person who is confined in jail upon a murder charge is more important to society than a civil case which involves nothing more than a small mercantile account. When the State assumes a monopoly upon the administration of justice, it must promise to adjudge all cases, whether civil or criminal, promptly. But that it not tantamount to saying that when a judge sets his docket he may blindfold himself and become heedless of the relative importance of the cases. In the setting of dockets, our legislature has decreed that criminal cases are entitled to precedence. Such is the plain mandate of ORS 134.120.

It is no novelty to observe a judge of our circuit court or one of our federal judges dismiss civil cases which were not prosecuted with requisite diligence. In fact, Oregon has legislation upon that very subject: ORS 18.260. The federal rule is Rule 41(b), Federal

Rules of Civil Procedure, 28 USCA. A recent example of judicial action which dismissed a civil case for want of prompt prosecution is *Reed v. First National Bank of Gardiner,* 194 Or 45, 241 P2d 109.

The Rules of Criminal Procedure for the District Court of the United States, which were adopted by the Federal Supreme Court upon the recommendation of a committee appointed by that court and headed by Honorable Arthur T. Vanderbilt, contains this provision:

> "* * * if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint." Rule 48, Federal Rules of Criminal Procedure, 18 USCA.

That rule is the latest enactment upon the subject of prompt trial of criminal cases. It represents the views of the best elements of the profession. Before the rule was submitted to our highest court, it, as also all the other proposed criminal rules, was debated and analyzed by bar associations throughout the nation. Surely under the rule just quoted no one would claim that delay in the trial of a homicide case was necessary if the trial was postponed by the judge so that he could give his time to cases involving nothing more important than small sums of money.

The prevailing opinion makes much ado over the fact that a constitutional provision which provides for prompt trials cannot be limited by the enactments of the legislature. I had not thought that our former opinion said anything to the contrary. This court would have little difficulty and no hesitancy in declaring unconstitutional a statute which undertook to declare that a trial was timely if it followed the indictment within, say, twelve years. But can we say that the constitutional command would be violated if the legis-

lature should require that a trial be had within a very short period of time? The majority regard the present statutory command as too confining for "present-day conditions." If the statute had imposed a greater limit upon the State than the constitution countenances, then the majority should strike down the statute. The constitution is no less the source of power for the state than the shield of the accused. If the power of the people to enforce the law is prescribed by a statute, then that statute must yield to the paramount law.

No one claims that the rights established by ORS 134.120 rise to constitutional status so that no succeeding legislature could lengthen the time in which a trial may be brought after indictment. It is my belief, however, that ORS 134.120 measures and gives meaning to the language "without delay". The statute is constitutional because it sets a maximum time which is comparable with the time allowed, not only in other jurisdictions, but also historically. So long as the statutory command lies within the time known historically and contemporaneously, it will furnish the constitutional standard.

The prevailing opinion, rejecting the standard given by ORS 134.120, says that the criterion of "without delay" is the discretion of the trial court. It furnishes us no test, no guide, no rule whereby we may know that the discretion has been faithfully exercised. It is content to say that the record in this case discloses no abuse of discretion. We are left with no intimation of what an abuse may be. The rule under analysis may work both ways. Let us assume that a person accused of a serious crime has been released upon bail and that the judge repeatedly overrules the district attorney's applications to set the case for trial.

Let us suppose that the judge fills his docket with civil cases. Now let us assume that the district attorney, after meeting with the succession of rebuffs, applies to this court for a writ of mandamus directed to the judge to set the case for trial. Can anyone discern in the prevailing opinion any hope that the mandamus proceeding could succeed?

The idea that the duty to try the defendant without undue delay is entrusted to the discretion of the trial judge is not new. It was rejected by this court many years ago. *In re Von Klein,* 67 Or 298, 135 P 870, was an original proceeding in mandamus. The order sought was to direct the trial court to dismiss a prosecution because the case was not brought to trial within the statutory time. This court quashed the writ on the ground that the remedy by appeal from the order was adequate. The fundamental problem of discretion was handled by Mr. Justice McBRIDE in this manner:

> "It is contended upon the argument that the remedy by appeal would not be adequate, for the reason that upon appeal the decision of the lower court could be reversed only for an abuse of discretion; but the argument is fallacious. Either the defendant had an absolute right to a dismissal upon the facts presented, or the court had an absolute right to refuse. If it was a matter of discretion, and the court exercised that discretion, we have no right to interfere in any event. If, on the other hand, the attempted showing made by the state was not up to the standard required by law, the court was without jurisdiction to try the case, and erred in refusing to dismiss it. It is clear that every question which petitioner seeks to raise by this proceeding could have been raised upon an appeal from the motion to dismiss."

That holding is ignored and evidently overruled by the one announced today.

The prevailing opinion next concerns itself with the statute (now ORS 134.120) which was construed in the language just quoted. In the case at bar the time has no doubt passed within which a trial can be held without the invocation of the "good cause" exception which forms a part of ORS 134.120.

The opinion written by Mr. Justice BRAND gathers together bits of language selected from various decisions in which ORS 134.120 has been involved. In some cases, Mr. Justice BRAND returned to the original affidavits and records which had been filed in the case. From the excerpts of the decisions which he sets forth it appears that certain phrases have kept on cropping up.

I will now set forth a chronological treatment of the cases in which ORS 134.120 was involved, under a belief that a statement of the actual holdings will be more useful and meaningful than a collection of selected passages.

We begin with State v. Breaw, 45 Or 586, 78 P 896. That decision held that the words "next term" meant the term following the one in which the indictment was returned. The court affirmed the denial of a motion to dismiss the remaining indictments because they were set for trial in the term following the term in which they were found.

In State v. Rosenberg, 71 Or 389, 142 P 624, and State v. Hellala, 71 Or 391, 142 P 624, the indictments were ordered dismissed and the defendants discharged. The affidavit of the district attorney to the effect that he could not reach an agreement with counsel for the defendants as to the time of trial was held insufficient cause for postponement.

State v. Clark 86 Or 464, 168 P 944, held that the illness of one defendant, requiring delay of trial on one

indictment, and a trial resulting in a hung jury in the trial upon the other indictment, were good cause for continuing the cases to the next term.

In *State v. Moss,* 92 Or 449, 181 P 347, the court affirmed a denial of the motion to dismiss because of the consent of the defendant.

*State v. Bertschinger,* 93 Or 404, 177 P 63, sustained the validity of an order which overruled a motion to dismiss. The trial was initially delayed by agreement between counsel and was not set until two months afterward. This court said:

> "This case is the usual result of oral stipulations between counsel about which the court is not consulted and which it has not approved, and of the setting of trial without ample notice to opposing counsel. Yet we are convinced that the office of the district attorney acted in good faith and that any apparent delay in the trial of the case was not through the fault of that office. The record shows that the real cause of the delay was the congested condition of the trial docket and that this case was actually set for trial on the first open date."

In *State v. Bateham,* 94 Or 524, 186 P 5, the denial of the motion to dismiss was sustained upon the ground of the insufficiency of the appellant's showing. Mr. Justice BURNETT, speaking for the court, said:

> "* * * To aid the Fabian policy of the defense, the showing of the state ought to be combated by sworn statements disclosing that there were times during the terms succeeding the return of the indictment when the court could have heard this case. The case made by the state of 'good cause to the contrary' appeals largely to the discretion of the trial court and we are not prepared to say from the record before us that the discretion was abused in this instance."

The defense merely recited the number of criminal cases that had been decided.

In *State v. Stilwell,* 100 Or 637, 198 P 559, the court affirmed the denial of the motion to dismiss on the ground that the delay was caused by the erroneous grant upon the defendant's application of a change of venue.

*State v. Lee,* 110 Or 682, 224 P 627, holds everything that the prevailing opinion claims for it and is indeed their oracle.

*State v. Goldstein,* 111 Or 221, 224 P 1087, affirmed the trial court's denial of the defendant's motion to dismiss an appeal from the defendant's conviction. The continuing order recited that the criminal docket was so congested that it was impossible to try additional cases at the instant term. The decision of this court said:

> "In the absence of any showing to the contrary, and there is none, we assume that this record, made by a court of general jurisdiction, is a verity; and such entry has been held to be sufficient: *State v. Bertschinger,* 93 Or 404 (177 Pac. 63)."

*State v. Barrett,* 121 Or 57, 254 P 198, affirmed the conviction, and in so doing declared that the trial court was in a better position than this court to determine whether the defendant had consented to the delay.

*Johnston v. Circuit Court for Multnomah County,* 140 Or 100, 12 P2d 1027, was an original proceeding in mandamus. The court held that the cause of the delay was the procedure followed by the defendant which included several demurrers, a change of attorneys and a petition for a change of venue.

In *State v. Moltzner,* 140 Or 128, 13 P2d 347, the denial of the defendant's motion to dismiss was

584

affirmed. The court ruled that it was proper that an audit should be made and held that lack of time was good cause for not dismissing the indictments. As to the showing made, the court said:

"Affidavits were displayed by counsel for defendant at the argument of this case to the effect that the orders of continuance made at the close of each term, as aforesaid, were entered pursuant to a practice which had prevailed for many years and that no judge had informed affiants that such order had been made. This is entirely insufficient to impeach the record of the court. In order to be controlling, such impeachment must be made by the court itself."

In *State v. Swain,* 147 Or 207, 31 P2d 745, 32 P2d 773, it was held that the defendant's absence from the state due to his imprisonment in California was good cause for not dismissing the indictment.

*State v. Chadwick,* 150 Or 645, 47 P2d 232, ordered the indictment dismissed and the defendant discharged. It held that an implied consent was insufficient good cause. The decision declared that when the trial court gives the reason why a case was continued, this court will determine the sufficiency of that reason. It further stated that "lack of time" is not good cause.

*State v. Weitzel,* 153 Or 524, 56 P2d 1111, and *State v. German,* 163 Or 642, 98 P2d 6, held, on the authority of *State v. Lee,* supra, that the continuing order was entitled to absolute verity.

The foregoing are our precedents. The prevailing opinion holds that (1) "lack of time" is a good cause for not dismissing an indictment which was not tried within the time permitted by ORS 134.120; (2) in this case there was a "lack of time"; and (3) the continuing order which recites "lack of time" renders the order

virtually unimpeachable because the matter is discretionary with the trial court.

The opinion penned by Mr. Justice BRAND accords to *State v. Lee,* supra, controlling effect. The soundness of that decision is essential to the prevailing opinion. Unless the pronouncements in *State v. Lee* are correct, the prevailing opinion cannot stand.

The indictment in *State v. Lee,* which accused the defendant of the crime of nonsupport, was returned November 10, 1921. After the indictment had been returned, the defendant was released from incarceration upon his own recognizance. Later, the cause was continued from term to term of court until, finally, on March 13, it was set for trial on March 20, 1922. The orders continuing the case from term to term recited: "because of lack of time on the part of the court to hear and dispose of the same." March 13, 1922, the defendant moved for a dismissal. According to the decision, "The showing made by the defendant discloses that a number of days in the terms of court were permitted to pass in which no criminal cases were heard." The defendant depended upon the statute which is now ORS 134.120. The motion was denied. In sustaining the order of denial, this court's decision depended upon the proposition that (1) constitutional provisions which make provision for speedy trial make no distinction between civil and criminal cases; (2) the court's order continuing the case to the next term of court "because of lack of time" has not been impeached; and (3) setting cases for trial lies within the discretion of the trial court.

Since the holding in *State v. Lee* is vital to the prevailing opinion, an analysis will now be made of that decision. The latter is comparatively short. The part which is material to this case cited and depended

upon *Ex parte Larkin,* 11 Nev 90; *State v. Hecht,* 90 Kan 802, 136 P 251; *State v. Bertschinger,* 93 Or 404, 177 P 63; *State v. Bateham,* 94 Or 524, 186 P 5; 8 RCL, p 72, § 26; and 16 CJ 445. Let us now acquaint ourselves with those authorities.

The first of the authorities cited in *State v. Lee* is *Ex parte Larkin. State v. Lee* quoted from that decision, and the prevailing opinion fuses the quoted excerpt into itself. By turning to *Ex parte Larkin,* we observe that Nevada had a statute similar to ORS 134.120. The Nevada court found that the hearing of *Ex parte Larkin* in the trial court was delayed with good cause. The following paragraph taken from *Ex parte Larkin* reveals the nature of the good cause, but this paragraph was not quoted in *State v. Lee,* nor is it mentioned in the prevailing opinion.

"The fact that a disastrous fire had occurred, destroying the court-house and so much of the city of Virginia as to render it impossible for the court to find a suitable room in which to meet, was, in our judgment, sufficient to authorize the court, in the exercise of its sound discretion, to make said orders. Recognizing the unsettled condition of affairs after such a fire, the members of the bar, with but one exception, consented to said orders being made, considering, as they doubtless did, that a public necessity existed therefor."

Clearly, those facts had no parallel in *State v. Lee,* and they have no resemblance to anything in the case at bar. Those who esteem constitutional rights and who are loath to see the right to speedy trial frittered away readily recognize that a disaster of the proportions described in the quoted paragraph was good cause for delaying the trial of a case.

*State v. Lee* next cited *State v. Hecht* and, concerning it, used this phrase, "to like effect". The prevail-

ing opinion quotes the part of *State v. Lee* which refers to *State v. Hecht* and which employs the phrase "to like effect". Let us now turn to *State v. Hecht.* It was an appeal by the State of Kansas from a dismissal of a prosecution under a Kansas statute which was similar to ours except that it expressly provided that want of time was a sufficient excuse. The court held that the illness of a county attorney might be deemed a sufficient cause for delay, but, going on, interpreted the order which dismissed the prosecution as a finding that the illness did not in fact exist, or that if it did exist it constituted no justification for delay because a deputy prosecuting attorney might have been assigned to conduct the case. The court, in rendering its decision, indicated specific examples of what might be deemed a "lack of time". We take the following from the decision:

"Guided by this just rule of interpretation we must inquire what is fairly comprehended in that clause of the statute excepting delays occasioned for want of time to try the cause. Circumstances may arise where the postponement of other and perhaps more important cases would leave sufficient time, although such postponements might be attended with great expense and possible failures of justice. The illness of the judge, referred to in cases reported, already cited, may leave insufficient time. Illness of a juror might leave the time too short to finish a trial. These and like contingencies suggest that 'the time to try the cause' means such time as should reasonably be given for that purpose consistent with the orderly assignment of causes and the diligent dispatch of business. The right of the defendant is not to be frittered away by an arbitrary assignment of the business of a term, so as to leave too short a time."

*State v. Hecht,* therefore, was an instance in which an order of dismissal was affirmed. It does not sustain

*State v. Lee.* We have already reviewed *State v. Bert-schinger* and *State v. Bateham,* the other two decisions cited in *State v. Lee.*

*State v. Lee* recites, and the prevailing opinion repeats, language taken from 8 RCL and 16 CJ. Those are worthy treatises, but they were not intended to be used other than as the cases cited in support of them used the language and illustrate its application. Mr. Justice BRAND underscored portions of the material which *State v. Lee* quotes from 16 CJ. To set forth exhaustively in this opinion the cases cited in 16 CJ would occupy an undue amount of space. All of the decisions cited by 16 CJ and 8 RCL have been examined. A reading of them reveals no support for the position taken by the prevailing opinion. They do not authorize a postponement of a criminal case for the purpose of enabling the court to try civil cases. For the proposition, "by delay occasioned by want of time to try the case", 16 CJ cites only *Sample v. State,* 138 Ala 259, 36 So 367. In that case, it appeared that the delay beyond the statutory time was caused by the exhaustion of the names in the jury box. Alabama law required the case to be tried before the venire drawn from the jury box and rendered the court powerless to refill the box. Therefore, the trial court could proceed no further in that term of court. As I just said, *Sample v. State* is the only authority cited by 16 CJ in support of its statement that a delay is justified if it is "occasioned by want of time to try the case." But 16 CJ also says that delay is warranted if caused "by accumulation of business rendering trial impossible." In support of that statement, the text cites *Commonwealth v. Trost,* 21 Pa Dist 1081. There the delay was occasioned by the necessity of making a medical analysis upon the remains of the victim of the pur-

ported crime for the purpose of detecting evidence of poison. In addition, the court found that the motion was not timely since the full time had not elapsed for the trial of the accused. *People v. Moran,* 144 Cal 48, 77 P 777, is also cited by CJ in support of the statement just quoted. In that case the defendant was indicted jointly with three others. All four moved for separate trials. A California statute provided that unless good cause was shown or the accused asked for a continuance, his trial must be commenced within 60 days after the information against him was filed. The defendant's trial occurred 62 days after the information was filed. The trial judge, in setting his docket, set first the trial of one Buckley, that is, one of the three jointly accused with the defendant. In sustaining that act, the decision under review reasoned: "The four defendants had demanded separate trials, and if they were tried in the same court, the trials must follow in succession." Buckley's trial was set for commencement within the 60-day period. In setting it, the trial judge left vacant, obedient to established custom, the period between Christmas and New Year's Day. Buckley's trial was protracted. When its end was envisioned it was inferred that it would conclude Friday, February 7, and thereupon the court set the defendant's trial to begin Monday, February 10, which, according to the decision, "was the earliest date it could have been commenced unless it had been put down for the preceding Saturday." But when it was set no one knew that Buckley's trial would actually conclude Friday, February 7. The court, in sustaining the order which denied the motion for dismissal, held that all of the above was reasonable and that it constituted good cause for the delay of two days beyond the 60-day period. I shall review no further the

cases cited in 16 CJ. When analyzed, all of them resemble the cases that I have reviewed. They afford, in my opinion, no justification for setting civil cases in preference to criminal ones and thereby postponing the trial of a person who is held in jail upon a nonbailable offense. Nor do they grant the trial judge carte blanche discretion in the administration of constitutional provisions which guarantee speedy trial. They do not invest him with discretion in complying with the demands of statutes such as ORS 134.120. Compliance with such statutes is mandatory, not discretionary. A part of 16 CJ, which seemingly *State v. Lee* and the prevailing opinion overlooked, reads as follows:

> "* * * But the want of time and the pressure of business on the part of the prosecuting attorney, or the mere statement of the judge that the court has been engaged otherwise, * * * is not 'good cause to the contrary,' within the meaning of that phrase."

I revert again to the authorities cited in *State v. Lee*. It will be recalled that it quotes a passage from 8 RCL, p 72, § 26, and that the prevailing opinion reproduces that quotation. A reading of RCL shows that it relies largely upon a note in 85 ASR 187. Examination of the cases cited in the note indicates that the nearest approach to the situation before us is in instances in which the trial court's docket was clogged with criminal, not civil, cases. A part of 8 RCL, § 26, which is quoted in neither *State v. Lee* nor in the prevailing opinion is this:

> "* * * A statute providing that one accused of a crime shall be brought to trial within a specified time, where delay is not attributable to the prisoner's act, is mandatory and imperative in its provisions, and confers no discretion on the court.

Hence the accused is entitled to his discharge after the lapse of time prescribed by law, where he was not tried, if he brings himself within the statute by showing that he was not in fault and that he did not apply for a continuance, and where the prosecution shows no valid cause for the delay."

That language is repeated verbatim in 14 Am Jur, Criminal Law, p 861, § 136.

From the foregoing, we observe an utter dearth of support for the holding in *State v. Lee*. The very authorities which it summoned to its aid refused to respond. Some which it cited held to the direct opposite of the conclusion to which *State v. Lee* came. Mr. Justice BROWN, the author of that decision, rendered long and meritorious service to the people of Oregon, first as District Attorney, then as Attorney General and, finally, upon the bench of this court. Experience indicates that even the best of judges once in a while err. As we have seen, *State v. Lee* is unsupported by authority. Its broad pronouncements cannot stand the test of reason. Moreover, we know from the teaching of experience that when the accused has shown, as she did in this case, that she was not responsible for the delay, it is just to put the burden upon the State to prove good cause for the failure to try the case in the next term of court. Experience also teaches that if the State is permitted to justify the delay by showing that the judge was engaged in the trial of civil cases or in office work [as the prevailing opinion intimates], the accused can never hope to succeed in availing himself of his constitutional right to a prompt trial. If such excuses are to be accepted, constitutional provisions and statutes awarding prompt trials may as well be repealed.

*State v. Weitzel,* supra, and *State v. German,* supra, cannot supply the fundamental soundness to sustain the law announced in *State v. Lee.* Although language similar to that in *State v. Lee* can be found in cases cited in it, the holdings in terms of the underlying facts do not furnish support for its broad doctrine. Consent was found to be a factor in *State v. Clark,* supra, *State v. Moss,* supra, and *State v. Barrett,* supra. Additional factors in *State v. Clark,* supra, were that in a previous trial a disagreement occurred and the defendant became ill. *State v. Stilwell,* supra, and *Johnston v. Circuit Court for Multnomah County,* supra, were based upon the dilatory procedure employed by the defendants which resulted in the delay. *State v. Swain,* supra, depended upon the absence of the defendant from the jurisdiction. Those cases were based upon causes that are fundamentally different from a lack of time resulting from the setting of civil cases in lieu of the accused's criminal trial.

The remaining four cases, which held that the prosecution should not be dismissed, turned upon the failure to show that good cause was lacking rather than holding that the claimed events, if true, constituted good cause. *State v. Bateham,* supra, indicated that the defendant should have shown that there were days when the cause could have been heard. The showing of the mere number of criminal cases heard during the prior terms was deemed insufficient. *State v. Bertschinger,* supra, declared that there was no open date when the cause could have been heard and that the case was actually set down on the first open date. *State v. Goldstein,* supra, held that when the order recited that the criminal docket was congested, and no proof to the contrary was offered, the order would be taken as a verity against the claim that it was made without notice

and opportunity to rebut. In *State v. Moltzner,* supra, delay was deemed proper in order to enable the State to complete an audit.

The farthest that the cases last cited go in the direction of the prevailing opinion is to hold that the showing made by an accused in support of his motion to dismiss must impeach the order of the trial court which recites lack of time, and also prove that there were days when the case could have been heard. The statement in *State v. Moltzner,* supra, that the order is taken as an absolute verity should not be misunderstood. That opinion clearly indicates that the attack upon the order should be made in the trial court. A motion to dismiss the indictment because of failure to try in the next term and charging the absence of good cause necessarily attacks that order. Because the trial judge decides adversely to the mover does not mean that the order stands sacrosanct. The decision of the trial court can be appealed, and this court will review the decision of the trial court. Obviously, if the order was literally unimpeachable, there could be no appeal from the trial court. Impeachment is dependent upon the showing made at the hearing on the motion.

Our decisions show that this court is ready to justify a delay in the trial of a criminal case when a showing has been made that the delay was caused by some substantial event, such as consent, dilatory tactics by the defendant, or an unimpeached, packed criminal docket. But how can one justify a doctrine such as the prevailing opinion attributes to *State v. Lee,* whereby an accused's constitutional and statutory rights are lost to him if the trial judge chooses so to arrange his docket that he cannot hear the case within

the allotted time? If the courts fail to perform properly their duties, we cannot visit that failure upon the hapless defendant. To support the prevailing opinion, one must assert that all of the cases in Oregon, other than *State v. Lee, State v. Weitzel* and *State v. German,* are unsound and that the jurists sitting in other jurisdictions, whose decisions are mentioned in preceding paragraphs, misunderstood the guarantee of a speedy trial and misconstrued statutes similar to ORS 134.120. Clearly, *State v. Lee* as a precedent is entitled to no value.

The opening paragraph of this opinion mentions the fact that the constitutional right under consideration is a venerable one. In Anglo-Saxon jurisprudence it received royal assent when King John affixed his seal to Magna Charta in 1215. Four hundred years later it again received royal approval. At that time Charles I gave his royal assent to the Petition of Rights, penned by none other than Sir Edward Coke, the fountainhead of the common law. The acquiescence of neither King John nor King Charles in those documents was voluntary. But neither could withstand the determined demands of their subjects for assurance that rights, which the succeeding centuries have vindicated, would any longer be trod underfoot. Coke knew whereof he wrote when he penned the Petition of Rights—for seven months he had been imprisoned in London Tower without trial and without being faced with any charge. Those two great charters of Anglo-Saxon freedom have been the inspiration of hundreds of constitutional and statutory provisions which guarantee the accused that he shall not languish in prison for an undue period of time awaiting trial.

The Model Code of Criminal Procedure, written by

the American Law Institute, contains this provision
(§ 292):

> "* * * when a person has been indicted,
> or informed against, for an offense if he is not
> brought to trial for the offense within ————
> after the indictment has been found or the informa-
> tion filed, the prosecution shall be dismissed upon
> the application of such person, * * * unless
> good cause to the contrary is shown, by affidavit,
> or unless the cause has not proceeded to trial be-
> cause of the defendant's consent or by his action."

A note appended to the section suggests that in the
blank space "words appropriate to accomplish the
trial or dismissal within about three months should be
inserted." The supplement to the code shows that 31
states have legislation which authorizes the dismissal
of the prosecution for failure to try the accused within
a stated time. Our three neighboring states of Cali-
fornia, Idaho and Washington limit the time to 60
days after indictment. Nevada, the fourth state which
borders upon Oregon, has a statutory limit the same
as ours.

From the foregoing, we see that the right of an
accused to a trial free from undue delay has engaged
the attention of constitution writers and lawmakers
for more than seven centuries of time. Those friends
of justice have realized that unless a limit is placed
upon the period within which an accused can be held
in jail awaiting trial, liberties will be at the pleasure
of the crown or the executive branch of the govern-
ment. Throughout all of that period of 700 years all
realized that the man upon the bench has some dis-
cretion in the matter, but none have been willing to
subject the right of the accused even to the discretion
of the prospective trial judge. The object of the deter-

mined quest was to secure legislation whereby a time limit would be fixed and that, unless the prosecution began within that time or the State made an affirmative showing of inability to do so, the prosecution would be dismissed.

To hold at this late date that compliance with the constitutional and statutory provisions is discretionary with the trial judge defeats the efforts of the last seven centuries of time. Further to hold that a trial judge can delay the trial of an accused beyond the constitutional and statutory limits by filling his docket with civil cases empties the constitution and the statute of their meaning. When the words have been stripped of their meaning, they remain, it is true, but they linger on only as gaunt reminders of effective rights which this day have departed.

I dissent. Our former opinion is without error.

Tooze and Perry, JJ., concur in this dissent.

PERRY, J., dissenting.

I am unable to agree with the reasoning, and, therefore, the result, of the prevailing opinion and the specially concurring opinion, and in dissenting therefrom I wish to set forth some of my reasons why I still adhere to the views of this court as expressed in our former opinion.

As I view the prevailing and specially concurring opinions, in order that those opinions may have any foundation at all upon which to build, they must rely entirely upon the general order of continuance made and entered by the trial court on June 30, 1952.

The prevailing opinion attempts to breathe validity into the order by making it discretionary with the trial court on his own motion to continue criminal cases *beyond the next term of court* in which the indictment

is found, and the specially concurring opinion makes such an order of the court nonreviewable in this court because an appeal is not a direct attack upon the order, but is collateral thereto.

It seems to me that the statute is clear and unambiguous. It reads as follows: "If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, be not brought to trial at the next term of the court in which the indictment is triable, after it is found, the court must order the indictment to be dismissed, unless good cause to the contrary be shown". § 26-2002, OCLA, (ORS 134.120). This statute sets not the minimum time, but the maximum time in which a defendant may be held before being tried, or the cause dismissed. It does not say that the court "may" dismiss, it uses the positive term "must", and is mandatory as a rule of law, ordering dismissal unless any one of three conditions exist, to-wit: (1) the defendant has requested a postponement beyond the period of time under the terms of the statute, (2) the defendant has consented to a postponement beyond the time limited by the terms of the statute, or (3) when, although the time limit of the statute has expired, the court can say that a *good cause* existed for not trying the defendant within the time limited and prescribed by the statute. In this matter we are concerned only with the last, or third, proposition.

The people of this state enacted § 26-2002, OCLA, (ORS 134.120) as a positive rule of law to govern criminal proceedings. Since this law is mandatory, no discretion vests in the trial court. "Where there is a clearly defined and well-settled applicable rule of law the courts are bound to enforce the rule and discretion is at an end". *State v. Lewis,* 113 Or 359,

364, 230 P 543, 232 P 1013; *Long v. George,* 296 Mass 574, 7 NE2d 149; *Wilson v. Michigan State Board of Registration in Medicine,* 228 Mich 25, 199 NW 643; *Graham v. Yakima Stock Brokers,* 192 Wash 121, 72 P2d 1041.

In the case of *In re Von Klein,* 67 Or 298, 135 P 870, where the defendant sought release by mandamus for delay in bringing him to trial, Mr. Chief Justice McBRIDE on page 301 of the opinion said:

"It is contended upon the argument that the remedy by appeal would not be adequate, for the reason that upon appeal the decision of the lower court could, be reversed only for an abuse of discretion; but the argument is fallacious. Either the defendant had an absolute right to a dismissal upon the facts presented, or the court. had an absolute right to refuse."

It is, therefore, not a matter of judicial discretion where there is no dispute on the facts, but a matter of judicial judgment upon a question of law as to whether or not there has been a showing made of good cause for refusing the defendant's application for a dismissal.

In my opinion "good cause" must be such a cause as is capable of being recognized in the law as a lawful excuse for the violation of the defendant's right to a speedy trial under the constitution as defined by the terms of the statute. Under the statute, the burden rests upon the State to show lawful excuse. *State v. Bateham,* 94 Or 524, 186 P 5. The very terms of the statute do not permit the making of an order governing the future; it provides for the determination of facts in retrospect. The right of the defendant to a dismissal accrues when the statutory time for trial has expired, and not before; it is at this time that

the trial court must determine whether or not there existed in the past good cause why the defendant was not given a speedy trial as prescribed.

A general order such as was issued in this case at the end of the January term *that the court did not have time to dispose of such cases during that term* may be of some effect where the continuance is from the term in which the indictment is returned to the term immediately following, as such a continuance postpones the hearing only within the maximum terms of a speedy trial as provided by the statute, and the reasoning of the case of *State v. Abrams,* 11 Or 169, 8 P 327, cited in the prevailing opinion, would apply. But in the matter before us, the continuance of the case was beyond the terms of the statute, and the trial court's action on its own motion, in the absence of the defendant and her counsel, is to deny the defendant her constitutional and statutory right (for it is conceded that the defendant had a constitutional and statutory right to be tried at the April term of the court) without an opportunity to be heard.

The prevailing opinion and the specially concurring opinion by approving the action of the trial court and giving a legal status to a general order of continuance in criminal cases that will extend the time of trial beyond the terms of the statute, done in the absence of and without notice given to either the defendant or her counsel, entirely destroys the statute and sets a dangerous course. This, not because of the fact that a defendant is given the right to be present at every stage of the trial, but rather upon the proposition that the court cannot, by its actions in entering such an order, waive a defendant's right to a speedy trial as defined by the statute (*State v. Clark,* 86 Or 464, 168 P 944) without giving him an opportunity to

be heard in person or by counsel, because such action would be in direct violation of § 11, Art I of our Constitution. It is true that the setting of the time of trial, motions upon the law, and, ordinarily, continuances granted on application or motion before the impaneling of the jury, are not a part of the trial (*State v. Moore,* 124 Or 61, 66, 262 P 859), and the presence of a defendant is not ordinarily required, the rights of a defendant being protected if his counsel alone is present. The rule that the defendant need not be present at all proceedings affecting his rights is based upon the proposition that when a question of law is being determined, not a question of fact, then he is relying solely upon the status of the law, a matter within the knowledge of his counsel, "for where no fact in pais is involved, and all is of law, there is nothing which a lay prisoner can do or suggest in the case; his interests are then wholly in the keeping of his counsel." 1 Bishop's New Criminal Procedure, 2d ed, 235, § 269. But in this case the court, in violation of the defendant's right to be represented by counsel at all stages of the proceedings, determined adversely to the defendant's rights the question of fact, to-wit: *that the court did not have time to dispose of this case within the time prescribed by statute.* It is undeniable that this is a finding of fact that directly affected the constitutional and statutory right of the defendant.

The prevailing opinion admits that the order of the court is subject to attack, but sustains the decision of the trial court on the basis that the setting of civil cases on May 1, 1952, for a period of 71 days in advance [the defendant's case had long been at issue and the State had requested a trial date within the term] and refusing to continue a civil case so as to grant the defendant her constitutional and statutory

right to a "speedy trial", constitutes "good cause". The fallacy of this argument is quickly noted, for if such an excuse is "good cause", then, wherever there is a congested civil docket, the trial court by setting civil cases in advance of criminal cases may hold a defendant in prison on a nonbailable offense until released by death, and thus deny our own definition of a "speedy trial" under the constitution. "A speedy trial is one conducted according to fixed rules, regulations, and proceedings of law *free from vexatious, capricious, and oppressive delay created by the ministers of justice*". *Johnston v. Circuit Court, Mult. Co.,* 140 Or 100, 103, 12 P2d 1027. [Italics added].

My reasons for adhering to the views of this court as expressed in our former opinion may be summarized by quoting an excerpt from *State v. Kuhn,* 154 Ind 450, 453, 57 NE 106, 107, which reads as follows:

"* * * The question of discharge is not a matter of discretion with the court, beyond the bounds fixed by section 1853. When the prisoner brings his case within the limits of the statute, his right to a discharge becomes absolute. The courts seem united upon this point. In People v. Morino, 85 Cal. 515, 24 Pac. 892, under a similar statute, it is said: 'A party charged with a crime has the constitutional right to a speedy trial, and the court has no discretionary power to deny him a right so important, or to prolong his imprisonment without such trial beyond the time provided by law. The statute is imperative. It was enough for the defendant to show that the time fixed by statute, after information filed, has expired, and that the case had not been postponed on his application.' To the same effect, see In re McMicken, 39 Kan. 406, 18 Pac. 473; Walker v. State, 89 Ga. 482, 15 S.E. 553; In re Garvey, 7 Colo. 502, 4 Pac. 758; Ochs v. People, 124 Ill. 399, 16 N.E. 662.

"There is no pretense here that the case was postponed beyond three terms, or at any term, to procure the attendance of witnesses, and no claim that the evidence was not at all times available; but the appellant grounds its appeal upon the fact that there was not time sufficient at the November term to try the case, 'on account of the crowded condition of the docket.' The November term ran for 5 weeks,—30 judicial days. The evidence shows that 1 or 2 days were occupied with probate business, 9 or 10 days with the trial of prisoners in jail under criminal charges, and about 10 days in the trial of criminal cases against persons on bail, and that the balance of the term was occupied in the trial of civil causes.

"* * * * *

"In aid to the constitutional guaranty, it is made the duty of the trial judge to give preference to criminal over civil cases, and a failure of the judge to do so cannot be made to operate against the right of a defendant to trial within the limits of the statute."

ROSSMAN and TOOZE, JJ., concur in this opinion.